Argued October 4; reargued November 22; reversed December 13,
1938; rehearing denied January 10, 1939

# HANSON *v.* SCHRICK

(85 P. (2d) 355)

*John F. Reilly,* of Portland (Wilson & Reilly of Portland, on the brief), for appellant.

*Milton R. Klepper,* of Portland (Klepper & Imlay, of Portland, on the brief), for respondent.

BELT, J.   This is an action to recover damages for personal injuries sustained in an automobile accident occurring in the city of Portland on May 14, 1937, near the center of the intersection of Vancouver and Killingsworth avenues.   At the conclusion of plaintiff's case in chief, a motion for a judgment of involuntary nonsuit was allowed as to the defendant Associated Oil Company for the reason that, at the time of the accident, the defendant Schrick was not acting within the scope of his employment but was engaged in his own business.   From a judgment for $10,000 based upon a verdict in favor of the plaintiff, the defendant Schrick appeals.

In this controversy there is sharp conflict in the testimony of the witnesses relative to the charges of negligence.   Vancouver avenue, upon which defendant was traveling in a northerly direction, was a through

street and, at its entrance to the intersection in question, there was a two-button caution sign. In Killingsworth avenue, where it enters the intersection, there was a stop sign. Several witnesses testified that plaintiff, who was going west on Killingsworth avenue, failed to stop at the intersection but went through the same at from 35 to 45 miles an hour without reducing his speed. Other witnesses were equally positive that plaintiff brought his car to a complete stop and proceeded through the intersection to point of collision at a very slow rate of speed. It is noteworthy, however, that the plaintiff on May 26, 1937, about six days after leaving the hospital, signed a statement concerning the accident, reciting among other things that he slowed his car down as he entered the intersection, but ''I did not make a complete stop.'' While in the hospital and a day before leaving the same, plaintiff and his employer executed a promissory note to cover repairs to defendant's automobile. The evidence is likewise conflicting relative to the speed of the automobile which defendant was driving. Some witnesses testified that he approached the intersection at 20 or 25 miles an hour but greatly reduced his speed as he entered the same and that, at point of collision, his automobile had come to an almost complete stop. On the other hand there is evidence that defendant was driving 40 or 45 miles an hour and did not reduce his speed while in the intersection. The foregoing statement of facts concerns questions for the determination of a jury. It is set forth merely as a background for consideration of the assignments of error on appeal.

Relative to the issue of speed, the defendant offered evidence to show the manner in which the plaintiff was driving his automobile about one-half mile distant from the point of accident. A witness was asked at what

rate of speed, in his judgment, the Hanson automobile passed between him and the curb on Williams avenue, some eight blocks south of Killingsworth. Upon objection being sustained to such question, counsel for defendant made the following formal offer of proof:

"Defendant offers to prove by the question as to the speed of the Hanson car when it passed between the witness' car and the curb on Williams Avenue that the car was traveling,—the Hanson car was traveling approximately fifty miles an hour. Defendant also offers to prove by the testimony of this witness, in answering the questions about whether the car slowed down appreciably between the time it passed the witness' car and Killingsworth, that it did not. And the defendant offers to prove by this witness by the question relating to the approximate speed of the automobile between the time it passed plaintiff's car and Killingsworth Avenue that it traveled at approximately the rate of fifty miles per hour. In making this offer, we offer this testimony further in connection with the testimony of the witnesses Siemens and wife as to their presence in the intersection of Williams Avenue and Killingsworth, and also on the subject of the testimony of the plaintiff that he approached Vancouver Avenue by way of Killingsworth, having turned onto that street at Union Avenue instead of Williams Avenue; and further, impeachment of the plaintiff that he was not on Williams Avenue at all that day."

The trial court was of the opinion that such evidence was too remote but stated that defendant would be permitted to show the manner in which plaintiff operated the car from the point where it turned into Killingsworth avenue, about 500 feet from place of accident.

In our opinion, error was committed in rejecting the above evidence as we think the jury might reasonably infer therefrom that the plaintiff drove his automobile in a careless and reckless manner at place of

accident. The offer of proof should be considered in the light of evidence as to the speed of plaintiff's car as it entered the intersection. Orville Bell, in answer to the question, "Now, Mr. Bell, did you observe the manner in which the Hanson car made the turn from Williams Avenue into Killingsworth Street?" stated, "Well, I noticed that he turned the corner going awfully fast, and I could hear the tires whine as they went around the corner * * *" We think that the evidence of speed one-half mile distant should not be rejected because the record fails to disclose the speed plaintiff was traveling after he turned into Killingsworth avenue to a point approximately 100 feet east of the intersection. It should be borne in mind that only a few seconds elapsed between the time plaintiff turned into Killingsworth avenue and the happening of the accident.

■ We recognize the rule, as established by many authorities (Berry, Automobiles (7th Ed.) Vol. 5, p. 454; Huddy, Cyclopedia of Automobile Law (9th Ed.), Vol. 15-16, § 184) that discretion is vested in the trial court to determine whether speed at some place other than that of the accident is too remote. No hard and fast rule can be laid down for determining the relevancy of such evidence. It is believed, however, that the instant case is not within the twilight zone. Since the evidence offered was clearly pertinent to the issues, the probative value thereof was for the jury and the trial court, in rejecting the same, was not exercising legal discretion. This error, in itself, however, would not warrant a reversal.

The most serious assignment of error pertains to the following instruction of the court:

"I instruct you that the evidence of the smell of liquor on the breath or of having been drinking intoxi-

cating liquor is not sufficient, standing alone, to prove intoxication or that one is under the influence of intoxicating liquor.''

There is a sharp conflict in the evidence as to whether plaintiff was under the influence of intoxicating liquor at the time of this automobile accident. Officer George H. Phillips, who has been investigating traffic accidents in the city of Portland for the past 14 years, testified that he smelled beer on plaintiff's breath. On cross examination, in reference to a conversation with counsel for plaintiff about such matter, the police officer testified:

''I told you I smelled the odor of alcoholic contents. To be positive it was on the man's breath, I kneeled down alongside of him while he was reclining on this cushion of his car and got my face down over his and got a whiff of beer. Then in order to be positive of it, I went to Emanuel Hospital and asked the doctor if he had been drinking and the doctor told me that he had; that is the way I answered your question in the traffic office.''

Two other witnesses also testified about smelling beer on plaintiff's breath at the time and place of the accident. There is also evidence in the record that plaintiff, after the accident, walked around as in a daze and did not seem to know what it was all about. When taken to the hospital he bit the thermometer into pieces. He could not remember on what streets he approached the scene of the accident or that he ever saw any stop sign. It is only fair to state, however, that there is strong evidence tending to show that plaintiff was not under the influence of intoxicating liquor and that the peculiar manner in which he acted was due to the shock resulting from his injuries. It is not the purpose of this court to argue that the plaintiff was drunk or sober.

Suffice it to say there is substantial evidence in the record from which a reasonable inference could be drawn that the plaintiff was under the influence of intoxicating liquor. Indeed, counsel for plaintiff, in oral argument, in answer to the question as to whether such evidence was sufficient to submit to the jury, answered, ''I think so, without any doubt.''

■ Under such state of the record, it was reversible error for the court thus to invade the province of the jury in determining the effect and value of the evidence as to whether plaintiff was under the influence of intoxicating liquor. It has been repeatedly held by this court that it is error for the trial court to select a single part of the evidence and instruct the jury as to its probative value: *Dunn v. First National Bank*, 149 Or. 97 (39 P. (2d) 944); *Service v. Sumpter Valley Ry. Co.*, 88 Or. 554 (171 P. 202); *State v. Ausplund*, 86 Or. 121 (167 P. 1019); *Saratoga Inv. Co. v. Kern*, 76 Or. 243 (148 P. 1125); *Kellogg v. Ford*, 70 Or. 213 (139 P. 751); *State v. Huffman*, 16 Or. 15 (16 P. 640).

■ The third assignment predicates error upon the action of the court in sending to the jury, when it retired for deliberation, a map known to the record as plaintiff's exhibit No. 1 for identification. This map was prepared by defendant. When plaintiff was first called as a witness, he being the first witness to testify in his own behalf, the following incident occurred:

''Mr. Klepper: Now at this point, Your Honor, Mr. Reilly had a map prepared and he very kindly consented that we might use it. I will agree to a correction on the map; there has been a change in the sign since the accident.

''The Court: Let the clerk take it in there and change it, and go ahead with the witness.

"Mr. Klepper: Could we let that be introduced as your exhibit?

"Mr. Reilly: I don't suppose technically we can. You may go ahead and use it if you want to, and when it comes our turn, I will put it in.

"The Clerk: Are you putting this in for identification?

"Mr. Klepper: Yes.

"The map was thereupon marked plaintiff's exhibit for identification."

Thereafter, throughout the trial the map was used in the same way as if it had been introduced in evidence, that is, witnesses and counsel referred to it, witnesses placed marks upon it attested by their respective initials, and it was not until the taking of testimony before the jury had been concluded and a view of the scene of the accident had been taken by the jury that any objection was interposed to the map. Upon the return of the jury, the parties and counsel from the view, the defendant called the bailiff to the witness stand in chambers and out of the presence of the jury, and the bailiff testified in effect that upon the view he observed evidence of a place in the center of Killingsworth avenue on the east of Vancouver avenue where he was sure there had been a stop button; but he could not say of his own knowledge that the mark in question was the place where the sign was on May 14, 1937, at the time of the accident, or whether there had been a stop sign or a caution sign there.

After the court had delivered his charge to the jury, both plaintiff and defendant disclaimed having offered the map as an exhibit to be received in evidence. The court, nevertheless, continued to treat it as an exhibit and permitted it to go to the jury along with the other exhibits.

Error was committed in thus receiving the map in evidence but we think it was not prejudicial to the interests of the defendant: *State Bank of Tabor v. Brewer*, 100 Iowa 576 (69 N. W. 1011); *Stanley v. Thomas* (Iowa), 82 N. W. 325; *Eichhorn v. Lundin*, 172 Minn. 591 (216 N. W. 537).

There are other assignments of error but we do not deem them of sufficient importance to merit discussion.

Viewing the record in its entirety, we are of the opinion that the defendant did not have a trial such as the law contemplates. It, therefore, follows that the judgment is reversed and the cause remanded for a new trial.

BEAN, C. J., and ROSSMAN and KELLY, JJ., dissent.