Argued November 1, affirmed November 23, petition for rehearing
denied December 28, 1960

## MAY *v.* MACK ET AL

356 P. 2d 1060

*Austin Dunn*, Baker, argued the cause and filed a brief for appellant.

*A. S. Grant*, Baker, argued the cause for respondents. On the brief were Grant, Fuchs, Rose & Daron, Baker.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This was an action for wrongful death brought by the plaintiff as executrix of the estate of Sterling May, deceased, arising out of an automobile collision with a car driven by Dewey Leonard Dunleavy, deceased, and owned by Robert L. Mack.

Defendant Julius A. Vanderwiele, administrator of the estate of Dewey Leonard Dunleavy, counterclaimed under the wrongful death statute.

The case was submitted to a jury in the circuit court of Baker county, Oregon, and their verdict was returned for the defendant.

The accident took place shortly after midnight of August 10, 1958, on highway 30, just within the southerly limits of the city of Baker, Oregon.

Sterling May was driving a 1949 Chrysler sedan

out of Baker toward Ontario, Oregon, and Dewey Leonard Dunleavy was driving a 1956 Oldsmobile, owned by Robert L. Mack, from Huntington into Baker, Oregon. The two cars collided on a fairly straight stretch of highway just inside the south city limits of Baker on highway 30.

Both drivers were killed in the crash, and there were no eyewitnesses to the accident or the events immediately preceding. John May, the 16-year-old son of Sterling May, was in the car with his father, but he did not see the accident, as he was lying down in the seat preparing for sleep, if not in fact asleep.

The cars came to rest about 106 feet apart after the accident, and they both were almost entirely demolished. There were no skid marks or other signs of brakes being applied to either car. There were a few small scratches or gouges in the pavement on each side of the yellow center line, some signs of water that had dropped from the May car and a streak of water and anti-freeze from the Dunleavy car. The debris was scattered pretty generally over the road, although there was some testimony that it was more concentrated on the May side of the road near the outer edge of the pavement.

There was no direct evidence of the speed of either car, either immediately before or at the time of the accident. As mentioned before, there was no eyewitness and, consequently, no testimony as to the position of the cars on the road or the manner of driving at the time of the accident. A number of photographs of the scene of the accident and the cars involved are in evidence.

The defendants moved for a nonsuit at the close of plaintiff's case and for separate directed verdicts

for the two defendants at the end of the case. Directed verdict was granted in favor of defendant Mack, owner of the car driven by decedent Dunleavy. The jury then returned a verdict for the other defendant, and the plaintiff appealed.

There is a serious question in this case whether there was sufficient evidence of negligence against either the plaintiff or the defendants to warrant submission of the case to the jury.

The plaintiff on her appeal raises two assignments of error. We shall consider assignment No. II first.

By this assignment the plaintiff claims that the court erred in sustaining defendants' objection to plaintiff's offer of proof of testimony by Carl J. Buss regarding the speed and manner of driving of Dewey Leonard Dunleavy several miles from the scene of the accident.

Referring to Dunleavy's driving, the plaintiff asked the witness Buss, "What, if anything, did you notice about it?" On objection by the defendants, the court asked for an offer of proof out of the presence of the jury.

After questions by the trial court and defendants' statements and questions, the plaintiff's attorney stated as follows:

"We offer to prove by this particular question that this witness had seen this automobile prior to that time and the conditions under which he saw it have been identified in his mind.

"\* \* \* \* \*

"It passed him there, came into Huntington, swung around and headed, with its headlights headed out toward the highway, and the driver got out and stood by the front of the automobile."

Following some further discussion, this statement was made by plaintiff's counsel:

"We offer to prove by this testimony that the witness observed Dunleavy, the driver of defendant's car, on several different occasions between Huntington and Baker when the Dunleavy car would pass him, stop, and pass him again at high rates of speed, and the last time it passed him was not too remote from the scene of the accident."

After some further discussion regarding the distance from the scene of the accident that the witness last saw Dunleavy, counsel for plaintiff continued as follows:

"We further offer to show by this testimony that it will show a driving pattern or habit of the driver of the Dunleavy car, and since there are no eyewitnesses that driving habits and patterns are material."

The court then rejected the offer or proof, and an exception was allowed.

After this offer was made and the ruling of the court, the witness Buss resumed the stand before the jury and gave the following answers to these questions:

"Q When was the last time you saw this Dunleavy automobile before the wreck?
"A Oh, I saw it about a distance this side of— north side of Pleasant Valley.

"Q How far from Pleasant Valley would you say, Mr. Buss?
"A Oh, I imagine a mile and a half or two miles.

"Q And how soon after that was it that you came to the scene of the accident?
"A Well, it wasn't very long from there. 20 minutes. 30 minutes."

There is no direct testimony showing the distance from Pleasant Valley to Baker. In the discussion the court remarked:

"Pleasant Valley is 13 miles from Baker isn't it?"

No answer or objection was made to that statement of the distance. In any event, that court or this court could take judicial knowledge of the distance. Applying the statement of witness Buss that it was a mile and a half or two miles out of Pleasant Valley that he last saw Dunleavy, it is apparent that any testimony he could give regarding Dunleavy's driving would be based on observation made about 11 miles from the scene of the accident and from 20 to 30 minutes prior to that time.

This court has several times passed upon this method of proving speed of cars. In *Hanson v. Schrick,* 160 Or 397, 401, 85 P2d 355, Mr. Justice BELT says:

"We recognize the rule, as established by many authorities (Berry, Automobiles (7th Ed.) Vol. 5, p. 454; Huddy, Cyclopedia of Automobile Law (9th Ed.), Vol. 15-16, § 184) that discretion is vested in the trial court to determine whether speed at some place other than that of the accident is too remote. No hard and fast rule can be laid down for determining the relevancy of such evidence."

In *Hanson v. Schrick,* supra, the court held that evidence of speed ½ mile away and continuing up to about 100 feet of the accident was competent and should have been received.

In *Martin v. Oregon Stages, Inc.,* 129 Or 435, 447, 277 P 291, a witness was allowed to testify to the speed of the defendant's stage at a point about ½ mile from the accident; but in that case another witness, a passenger in the stage, testified that the speed of the

stage was approximately the same for the last mile and up to the scene of the accident.

The ruling in *Ramp et al. v. Osborne et al.*, 115 Or 672, 239 P 112, was that speed of the car four or five miles away from the scene of the accident, without evidence that the offending driver maintained his speed to the scene, would not be competent.

■ Likewise in the case at bar, evidence of speed, if the witness Buss had been willing to so testify, approximately 11 miles from the scene of the accident would not have been competent when he could not connect it to the place where the collision occurred. In fact, Mr. Buss's own statement that he last saw Mr. Dunleavy about 11 miles from the scene of the accident, some 20 or 30 minutes before the accident, would not indicate fast driving at all.

The testimony offered was not competent without an offer of further evidence connecting it with the accident and was properly excluded.

Assignment of error No. I is that the court erred in giving the following instruction:

"I further instruct you that if you find from the evidence in this case that the sole, proximate cause of the accident was the act of some third party, then your verdict must be for the defendant."

The plaintiff took the following exception to this instruction:

"We take exception to the court's instruction XXXII relative to any act of a third party, as it injects into the case an element which was not placed in evidence."

There had previously been some discussion about whether the court used the word "act" in the instruction. After the above exception the court offered to

recall the jury and reinstruct on the use of the word "act" in that instruction. Both counsel declined this offer. The colloquy indicates that the court understood the exception to go merely to whether the word "act" was used in the instruction.

■ The above exception does not go to the question of whether or not evidence of the negligence of a third party as the sole cause of the accident must be pleaded. It is settled by this court that it need not be pleaded. *Whisnant v. Holland*, 206 Or 392, 292 P2d 1087; *Sylvis v. Hays*, 138 Or 418, 6 P2d 1098; *Brown v. Jones*, 137 Or 520, 3 P2d 768; *Multnomah Co. v. Willamette T. Co.*, 49 Or 204, 89 P 389.

The case of *Whisnant v. Holland*, supra, expressly overruled the holding in *Smith v. Pac. Nw. Pub. Ser. Co.*, 146 Or 422, 431, 29 P2d 819, which was in conflict with the previous decisions.

It is not clear whether the excepted-to instruction in this case was requested by either party. It was apparently given to cover the defendants' theory, expressed at least in argument, that the lights of the oncoming train blinded or confused one or both the drivers and caused the collision.

This would seem like a somewhat plausible theory; however, there was absolutely no proof offered that the lights of the train could or did affect either driver. The engineer of the streamliner did testify that the train came along about the time of the wreck and that he saw the lights of the auto in the "barrow-pit." He also showed that the tracks were very close to the highway for a considerable distance, but there was no testimony that the train lights in any way bothered these drivers or any others on the highway. The jury was left entirely to speculation on that matter.

■ The third party instruction should not have been

given in this case. There were not sufficient facts proved to justify such an instruction.

■ We mentioned before that the serious question in this case is whether there was sufficient evidence of negligence shown to justify submitting the case to the jury and whether the motion for directed verdict should have been granted.

We find nothing in the case to show which, if either, party failed to keep a proper lookout.

Speed was not properly proved in this case and would have to be inferred by the jury from the fact that the cars were badly mashed, without any competent way of telling which car caused the damage. It would not be a proper inference.

There is absolutely no proof as to which car was across the center line and caused the accident. Likewise, it would be mere speculation as to which car, or whether either or both cars were out of control at the time of the accident. It would require speculation to determine the point of impact.

In short, a very careful examination of the entire transcript of testimony, without setting it out in detail or the law applicable in each instance, convinces us that there was not sufficient evidence of negligence or proximate cause introduced to justify submitting either the complaint or counterclaim to the jury. It would have required the jury to guess and speculate. The motion for directed verdict should have been granted.

This being our view of the case, the above-mentioned error in instructions was harmless, as the jury decided the case as it should have been determined on directed verdict.

Affirmed.