Argued December 3, 1962, affirmed January 23, 1963

# DURKOOP *v.* MISHLER ET AL

378 P. 2d 267

*Sidney E. Thwing,* Eugene, argued the cause for appellants. On the brief were Thwing, Jaqua & O'Reilly, and William G. Wheatley, Eugene.

*Kenneth A. Morrow,* Eugene, argued the cause for respondent. On the brief were Venn, Mulder & Morrow, Eugene.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

PERRY, J.

The plaintiff, an adult daughter, brought this action as administratrix of the estate of the deceased for and on behalf of the surviving widow, as sole beneficiary under the provisions of the wrongful death statute, ORS 30.020. From a judgment entered on the jury verdict for the plaintiff, the defendants appeal.

To discuss the several assignments of error it is necessary to set forth the facts of the case.

On April 5, 1961, at approximately 1:20 p.m., Stuart G. Barrett, five feet, eight or nine inches tall, and of the age of 77 years, was found unconscious and in a dying condition in the street. His body lay close to a driveway on the east side of Lawrence street, a street which runs generally north and south in the city of Eugene, Oregon. This driveway, from the curb of the street to the sidewalk, extended six feet 11 inches sloping from the sidewalk to the street level. It was 29 feet wide at the curbline and 25 feet seven inches wide at the sidewalk. The sidewalk was five feet two inches wide. The driveway extending to the east of the sidewalk was divided by a laurel hedge three feet in height.

At the time deceased was found he was on his back, just south of the middle of the driveway, his head to the north three feet three inches from the east curbline, and his feet two inches therefrom. There was a tear in his trousers and grease on the back, front, and both sides of his clothing. There was blood on the driveway near the street, and underneath the body was found a paper sack containing bakery goods and medicine which bore tire tracks. Police officers were called and arrived at the scene at 1:35 p.m.

The deceased lived on the east side of Lawrence street, as do the defendants, his home being a block south of the defendants' home. He had been to the business section of the city, and past midday had had his hair cut.

The defendant, Mrs. Mishler, immediately before 1:20 p.m. of April 5, 1961, backed her car out of her driveway, which is the driveway heretofore described, and drove to town to pick up her husband. She testi-

fied positively that she looked back before backing, but was uncertain whether she stopped before passing over the sidewalk. She also testified that as she backed the automobile she did not see, feel or hear anything unusual. She and her husband returned to the scene at approximately the same time that the officers arrived.

The officers examined the defendant's automobile and found the dust on the rear bumper had been disturbed just to the left of center. On the undercarriage the officers found streaks in the dust, threads, a small piece of fresh human tissue, blood, and evidence that the grease around certain fittings had been "apparently rubbed clean." These various items of evidence of disturbance of the undercarriage of the automobile extended the length of the vehicle.

Expert testimony identified the threads as coming from the clothing of the deceased, and the grease on the deceased's clothing as the same as found on the undercarriage of the car. No one testified as to having seen the accident.

The defendants assign as error the trial court's refusal to sustain their motions for a directed verdict and judgment notwithstanding the verdict.

■ It is a well established rule of law that in determining whether the evidence will support a judgment for the plaintiff the evidence must be viewed in a light most favorable to the plaintiff.

The plaintiff alleged the defendant Cornelia W. Mishler was negligent in the following particulars: (1) failure to keep a proper lookout, (2) failure to keep the vehicle under control, and (3) failure to stop her vehicle before crossing the sidewalk. The defendants' motions therefore are to the effect that there is no substantial evidence to support any of

these allegations. They cite the general rules of law that negligence is never presumed; cannot be predicated on mere conjecture, guesswork or speculation; there must be a causal connection between the defendants' negligence and plaintiff's injury, and that when the evidence shows two or more equally probable causes of injury, for not all of which defendants are responsible, no action for negligence can be maintained, and rely upon the cases of *Lemons et al v. Holland et al*, 205 Or 163, 284 P2d 1041, 286 P2d 656; *Owens v. Holmes*, 199 Or 332, 261 P2d 383; *Quetschke, Adm'x v. Peterson and Zeller*, 198 Or 598, 258 P2d 128; and *Simpson v. Hillman et al*, 163 Or 357, 97 P2d 527. From these cases they draw the conclusion that for a jury to find negligence in this case they must resort to speculation.

In *Simpson v. Hillman,* supra, the evidence disclosed that a child three and one-half years of age was injured in a city street by being struck by an automobile. There was no evidence of lack of control of the vehicle, or driving at an excessive rate of speed, or failure to stop after striking the child. In fact, all of the evidence offered was to the contrary. The only other allegations of negligence were failure to maintain a proper lookout and failure to sound the horn. The duty to sound a horn would only be incumbent upon the driver upon knowledge of the child being in or near the street and therefore would depend upon the requirement of lookout. *Owens v. Holmes,* supra.

This court has often stated that in the absence of a positive legal duty to maintain a vigilant lookout, the duty of lookout is that which would be performed by the reasonably prudent person under the same or similar circumstances. *Phillips, Gdn. v. Creighton,*

*Adm.,* 211 Or 645, 316 P2d 302. Thus, the circumstances existing at the time determine the extent of the duty, and, as pointed out by the court in *Simpson v. Hillman,* supra, there were no circumstances which would disclose a duty upon the reasonably prudent person to look for or anticipate the presence of the child in the street.

In the case of *Quetschke, Adm'x v. Peterson and Zeller,* supra, the deceased, while standing out of the path of the vehicle, was run over by the trailer attached to a logging truck after the logging truck had been driven past the deceased. The duty of lookout had therefore been maintained, and since there was no evidence of how the deceased became involved with the trailer of the logging truck after the truck itself had passed, what occurred after defendant had performed his duty would be pure speculation, and would not encompass any of the specifications of negligence alleged by the plaintiff.

In *Owens v. Holmes,* supra, a child was injured by the operation of a motor vehicle. The principal contention of the plaintiff was that the defendant failed to maintain a proper lookout. There was, however, no evidence in the case that the child was ever in front of or near the front of the vehicle in a position to be seen by the driver, therefore there was no evidence of failure of duty to maintain a proper lookout.

No useful purpose would be gained in discussing the case of *Lemons v. Holland,* supra. The decision rests upon the same basis as those above discussed.

The matter before us is clearly distinguishable from the cases cited by the defendant.

■ This court has on numerous occasions pointed out that direct evidence is not required to prove a

fact; such fact may be established by circumstantial evidence.

There can be no doubt but that a jury could find that the automobile of the defendants passed over the person of the deceased. The disturbance of the dust on the rear of the car, there being none on the front, could lead to the reasonable conclusion that the automobile was backing when it first came in contact with the deceased.

■ It cannot be disputed but that in the use of an automobile, lookout to the rear, while backing, is as necessary in the reasonably careful use of a motor vehicle as lookout when proceeding forward. The statutes require the maintenance of a lookout when driving from a private way into the highway. ORS 483.206.

■ While ORS 483.206 refers to the yielding of the right of way to vehicles then using the highway, implicit therein is the requirement of lookout. Also, ORS 483.222 requires "The driver of a vehicle within a * * * residence district emerging" from a driveway to stop the vehicle before driving onto a sidewalk. This statute requires that the operator, by lookout, must ascertain whether or not pedestrians are on the sidewalk before proceeding. Thus, since in the performance of the duties imposed by statute the driver was required to maintain a lookout, in this case, both for pedestrians on the sidewalk and for motor vehicles in the street, it was for the jury to determine whether a reasonably prudent person would, and should have, in the performance of these duties, observed the deceased before striking him.

The court did not err in denying the motions of defendants.

■ The defendants also assign error in the refusal of the trial court to sustain their objections to evidence

offered by plaintiff which disclosed that the deceased in his lifetime rendered personal services which were of benefit to the wife, and in not instructing the jury that the measure of damages was limited to economic loss sustained by the widow from the untimely death of her husband.

■ This action, as previously stated, is brought under the provisions of ORS 30.020. Under this statute the measure of damages is the pecuniary benefit which could reasonably have been anticipated by the beneficiary of the act, in this case the widow, through the continuance of the life destroyed. *Hansen v. Hayes,* 175 Or 358, 154 P2d 202.

From the brief of the defendants we gather that they construe the words "pecuniary loss" to include only the amount of monetary benefit which would accrue through the earning capacity and thriftiness of the deceased, had his life continued to the end of his life expectancy. In other words, the value of the life lost measured by his earning capacity and thriftiness, based on the probable length of life according to the tables of mortality. If there exist no widow and no dependents, then such a rule has application. *Hansen v. Hayes,* supra. But, as in this case, when the action is brought for the benefit of the widow, the words "pecuniary benefits" are enlarged in scope to include the value of services which the beneficiary had a reasonable right to expect from the deceased.

> "The word 'pecuniary,' where it occurs in death statutes, is not used in a sense of the immediate loss of money or property. It looks to prospective advantages of a pecuniary nature which have been cut off by the premature death of the person from whom they would have proceeded. Pecuniary loss is, therefore, not dependent upon the actual earn-

ing of money or money's worth or contributions to the support of the beneficiaries at or before the date of the death, where there was a reasonable expectation of pecuniary benefit from the continuance of the life. It consists not only of the loss of financial assistance which the beneficiaries might reasonably be expected to have received from the deceased had his career not been shortened by the act of the defendant, but also the loss of other things which have a pecuniary worth. A wrongful death statute confining the damages recoverable to compensation for pecuniary loss merely intends that no compensation be given for the loss of things which have not a definite pecuniary value. In many jurisdictions, however, which declare that pecuniary loss only is recoverable in a death action, there are borderline cases which seem to give decided weight to nonpecuniary elements in defining pecuniary loss or in stating the damages recoverable." 16 Am Jur 122, Death, § 182.

This rule has generally been applied in those situations where the deceased was a housewife and had rendered no monetary assistance to the beneficiaries through employment. *Prauss v. Adamski,* 195 Or 1, 244 P2d 598. However, we see no reason why the same rule should not apply where the deceased's earning power has ceased due to retirement, and he has applied himself to caring for the comfort of his wife through the maintenance of the home. The value of these services may certainly be computed in money's worth.

The judgment of the trial court is affirmed.