Argued December 4, 1970, affirmed March 10,  petition for
rehearing denied April 13, 1971

ARROW TRANSPORTATION COMPANY,
*Appellant, v.* NORTHWEST GROCERY
COMPANY ET AL, *Respondents.*

482 P2d 519

*Duane Vergeer*, Portland, argued the cause for appellant. On the brief were Walter H. Sweek and Vergeer, Samuels, Roehr & Sweek, Portland.

*John L. Luvaas*, Eugene, argued the cause for respondent Northwest Grocery Company. With him on the brief were Paul D. Clayton and Luvaas, Cobb, Richards & Fraser, Eugene.

*William F. White*, Portland, argued the cause for respondent Marianne Benson. With him on the brief were White, Sutherland and Gilbertson, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, TONGUE and HOWELL, Justices.

DENECKE, J.

The plaintiff, Arrow Transportation Company, instituted this action to recover damages for the destruction of its tanker truck. This occurred when the tanker collided with a truck operated by the defendant Northwest Grocery Company. The defendant Benson is the administratrix of the estate of the driver of the Northwest Grocery truck. The two defendants'

counterclaimed, Northwest Grocery for the destruction of its truck, and Mrs. Benson for damages for the wrongful death of her husband. The jury denied the plaintiff's claim and awarded a judgment for damages to each defendant. Plaintiff appeals the judgments on the counterclaims.

The two vehicles collided head on while crossing a narrow bridge. The drivers were both killed and there were no other eyewitnesses. Various charges of negligence were made by the parties; however, the issue narrowed down to one charge, which vehicle was on the wrong side of the road. The plaintiff moved for a directed verdict on the counterclaims, contending that, taking the evidence most favorable to the defendants, the jury, nevertheless, could only speculate which vehicle was on the wrong side of the road. Plaintiff's motion was denied and plaintiff assigns this as error.

The evidence in this case is all circumstantial, that is, the jury can determine who was on the wrong side of the road only by inferences drawn from the evidence. The question is whether there was sufficient evidence from which a jury could properly infer that the Arrow tanker was on the wrong side of the road.

All parties agree upon the applicable law. It is the application of the law that poses the difficulty. *Eitel v. Times, Inc.*, 221 Or 585, 592, 352 P2d 485, 5 ALR3d 86 (1960),[1] states the law:

> "The general principle which describes our function in this class of cases is clearly stated in

---

[1] In Eitel v. Times, Inc., supra (221 Or 585), the issue was cause; here, it is negligence, but the law is the same. The law quoted is "applicable to the proof of any fact * * *." Beeler v. Collier, 240 Or 141, 143, 400 P2d 547 (1965).

the dissenting opinion of Chief Justice McAllister in Secanti v. Jones, 71 Adv Sh 81, 349 P2d 274, 277 *et seq.* (1960). The following quotations, used to describe the principle, are worth repeating. In 2 Harper & James, The Law of Torts, § 19.4, p. 1068, it is stated:

" 'The test is often expressed in this way: where from the facts most favorable to the plaintiff the non-existence of the fact to be inferred is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be permitted to draw it. "[W]here the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof." '

Prosser on Torts (2nd ed), § 42, p 200 expresses the same idea as follows:

" '* * * What is required is evidence from which reasonable men may conclude that, upon the whole, it is more likely that there was negligence than that there was not. Where the conclusion is a matter of mere speculation or conjecture, or where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been sustained.' "

Arrow has advanced what it contends is the most reasonable explanation of what happened. There were no skid marks, which, according to Arrow, indicates the collision was completely unexpected. Arrow believes it can explain the entire scene as it was after the accident by starting with the supposition that the right front wheel of Grocery's truck struck the curbing on the right side of the bridge entrance which caused the front end of Grocery's truck to swerve left

into the left front of the tanker which, in turn, deflected Grocery's truck cab to the right and caused the tanker trailer to jackknife into Grocery's cab. Arrow points to the matters of evidence which support this theory. The jury could draw an inference that this is what happened.

The successful defendants contend, on the other hand, that the most plausible explanation for the collision, based upon all the evidence, is that the tanker was slightly on the wrong side of the road, became aware of this just before the collision and was in the process, unsuccessfully, of turning onto the right side of the highway. The jury could draw an inference that this is what happened.

Merely because there was evidence from which the jury could have drawn either inference does not mean that the probabilities are evenly balanced. In every instance in which we hold that the question is one of fact for the jury there is evidence from which the jury could have found for or against the plaintiff or defendant.

The jury customarily must "pick and choose" to determine what facts it will find. What appears to be a reasonable inference to one jury or juror will not necessarily appear reasonable to another. The process of drawing reasonable inferences is similar to deciding what testimony is credible. What is credible to one jury may not be credible to another; however, the court does not hold in such a situation that the jury cannot decide the issue of credibility. In determining what is a reasonable inference or what is credible testimony the nuances of the evidence will affect juries differently. Inferences will appear more probable to some than to others.

The rule of law above quoted does not mean that the probabilities are equally divided if half the juries would find one way and half the other. The probabilities also are not evenly balanced if the trial court or the judges of an appellate court have difficulty in determining what inferences should be drawn. Once the court determines that inferences can be drawn favorable to the defendant or plaintiff the fact finder decides which inference is most convincing. The probabilities are equally divided only if there is nothing in the evidence from which a reasonable juror can make a choice.

■ In the present case we hold that the jury could correctly decide that the Arrow truck was on the wrong side of the road. It could decide this from the position of the vehicles after the collision, the location and condition of the cargo of Grocery's truck, the presence or absence of markings on either side of the bridge, and the grade and curve.

The opinion of Mr. Justice Hallows in *Evjen v. Packer City Transit Line, Inc.*, 9 Wis2d 153, 161-162, 100 NW2d 580 (1960), involving facts similar to those here present, is persuasive:

"When several inferences may reasonably be drawn from credible evidence and one of which will support a claim or contention of any party and the others will not, the rule is that the proper inference to be drawn is for the jury. *Dachelet v. Home Mut. Casualty Co.* (1951), 258 Wis. 413, 45 N.W. (2d) 331. While there is no evidence of the position of the motor vehicles just prior to the impact, except which may be inferred from the position of the motor vehicles, their cargoes, and the debris after the accident, and there is no direct oral testimony corroborating any inference to be drawn from the physical facts, we are of the opin-

ion the facts here presented, if anything, a jury question. The relative positions of the two vehicles and the debris after the collision cannot conclusively support either theory because the mechanical results of an accident of this kind are sometimes very surprising and hard to explain. It seems to us that in the present case they may be explained fully as reasonably on the theory that the collision occurred in the west lane near the center line as in the east lane. In *Glatz v. Kroeger Bros. Co.* (1919), 168 Wis. 635, 639, 170 N. W. 934, this court said such a situation was peculiarly appropriate for the judgment of a jury. * * *."

Arrow contends that *May v. Mack*, 225 Or 278, 356 P2d 1060 (1960), is dispositive. That was a head-on collision with no eyewitnesses and no skid marks. However, we said in that case: "There is absolutely no proof as to which car was across the center line and caused the accident." 225 Or at 286. In the instant case there is proof by inference, and, contrary to Arrow's contention, we have determined that a jury could find that the inference that Arrow was on the wrong side of the road is more likely than the inference that Grocery's truck was on the wrong side.

The trial court did not err in denying Arrow's motion for a directed verdict on the counterclaim.

■ Arrow also contends the court erred in instructing the jury that Arrow was negligent if it failed to keep as close to the right-hand edge of the bridge as practicable.[2] The trial court ended its instruction on this general subject as follows: "Now, if, as you view the evidence, defendants have proved by a preponderance of the evidence that plaintiff failed to give the defendant's vehicle at least one-half of the main

---

[2] ORS 483.302 so requires under certain circumstances.

travelled portion of the highway as nearly as possible and thereby did not drive as close as practicable to the right-hand edge of the highway, then you would find the plaintiff negligent." The trial court, therefore, instructed that failing to give the defendant's vehicle at least one-half of the main-traveled portion of the highway was tantamount to failing to drive as close as practicable to the right-hand edge of the highway. Without deciding whether such instruction was correct, it did not place upon Arrow any duty other than giving the defendant's vehicle at least one-half of the main-traveled portion of the highway which Arrow admits was its duty. The trial court did not err in this regard.

■ Arrow also contends the trial court erred in instructing the jury:

"* * * If you decide for Defendant Benson upon her counterclaim against the plaintiff on the question of liability, you must then determine the amount of money which will reasonably and fairly compensate Defendant Benson and the children of the decedent for actual pecuniary loss, if any, to Defendant Benson and these children. Pecuniary loss is the value of those benefits measured in dollars which Defendant Benson and the children could have reasonably expected to receive from the decedent had decedent's life not been terminated. In determining pecuniary loss, you should consider the following factors concerning the decedent: What the decedent customarily contributed in the past; what the decedent might reasonably have been expected to contribute in the future; what instructions, moral training or superintendence of education the decedent might reasonably have been expected to give his children had he lived; what services the decedent might reasonably have been expected to perform for Defendant Benson and the

children. \* \* \*." Oregon Uniform Jury Instruction 31.01.

Arrow excepted because the jury was instructed that in determining pecuniary loss it could consider "what instructions, moral training or superintendence of education the decedent might reasonably have been expected to give his children had he lived."

ORS 30.020, which creates a remedy for wrongful death, provides, in part:

"\* \* \* [A]nd in every such action such damages may be awarded as, in all the circumstances of the case, may be just, and will reasonably and fairly compensate the spouse, dependents or estate for the actual pecuniary loss, if any, to such spouse, dependents or estate and for all reasonable expenses paid or incurred for funeral, burial, doctor, hospital or nursing services for the decedent."

The "actual pecuniary loss" language was added by Oregon Laws 1967, ch 544, § 1, p 1317. The statute, however, without such amendment, had been interpreted previously to restrict damages to pecuniary loss. *Hansen v. Hayes*, 175 Or 358, 386, 154 P2d 202 (1944); *Durkoop v. Mishler*, 233 Or 243, 250-251, 378 P2d 267 (1963); Kester, *Procedure in Wrongful-Death Actions*, 29 Or L Rev 31, 34 (1949).

Pecuniary loss, however, has been held to include more than "the amount of monetary benefit which would accrue through the earning capacity and thriftiness of the deceased \* \* \*." *Durkoop v. Mishler*, supra (233 Or at 250).

In *Prauss v. Adamski*, 195 Or 1, 23-24, 244 P2d 598 (1952), we held:

"Furthermore, we are of the opinion that the words 'pecuniary loss', as applied to the damages

suffered by beneficiaries of a deceased wife and mother, mean something more than the actual earning of money or money's worth or contributions to the support of the beneficiaries at or before the date of the death, where there was a reasonable expectation of pecuniary benefit for the continuance of the life. It consists not only of the loss of financial assistance which the beneficiaries might reasonably be expected to have received from the deceased had her career not been shortened by the act of defendant, but also the loss of other things which have a pecuniary worth, such as the loss of a mother's care and attention to the physical, moral, and educational welfare of her children, and a husband's loss of her services in the household. The measure of damages is the monetary value of such services. * * *." Accord, McCormick, Damages, 349 (1935).

The instruction was correct. *Escobedo v. Ward,* 255 Or 85, 98-99, 464 P2d 698, 704-705 (1970), holding that in an action for the loss of a child's services, damages could not be recovered for the parent's loss of companionship of the child is not to the contrary. As we stated in *Escobedo,* a parent's right to recovery is based upon a separate statute with its own legislative history and different underlying policy considerations.

Affirmed.