Argued December 20, 1972, reversed March 5, 1973

STAVROS, *Respondent, v.* DEPARTMENT OF
MOTOR VEHICLES, *Appellant.*

507 P2d 45

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Terry G. Hannon,* Gresham, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

SCHWAB, C.J.

The Department of Motor Vehicles suspended plaintiff's driver's license for 90 days on the grounds that he refused to submit to a breathalyzer test after being arrested for driving under the influence of intoxicating liquor. ORS 482.540; ORS 483.634 et seq. Plaintiff initiated this proceeding to challenge that suspension. Judgment was entered in the trial court reversing the suspension order, and the Department appeals.

This case was submitted to the jury by special interrogatories which the jury answered as follows:

"1. Did the police officer have reasonable grounds at the time of the request to believe the plaintiff had been driving while under the influence of intoxicating liquor?
"ANSWER: Yes.

"2. Did the plaintiff refuse to take the breath test?
"ANSWER: Yes.

"3. Was the plaintiff informed of the consequences of the refusal to take the breath test?
"ANSWER: No.

"4. Was the plaintiff informed of the right to take the chemical test in addition to the breath test?
"ANSWER: No."

Neither party here argues that the first or second questions were improperly submitted to the jury. At trial the Department moved to withdraw the third and fourth questions from the jury, i.e., moved for a directed verdict as to those issues. The trial court's denial of that motion is the basis of the Department's sole assignment of error.

■ As a prerequisite to a valid license suspension for refusing to submit to a breathalyzer test, the police are required to inform a driver of certain rights and consequences of his refusal. ORS 483.634(2); *see, Palmer v. Dept. of Motor Vehicles,* 7 Or App 219, 490 P2d 526 (1971). The information that must be conveyed to a driver is stated in a document received into evidence without objection, one portion of which reads:

"CONSEQUENCES AND RIGHTS OF REFUSAL OF BREATH TEST

"If you refuse to take a breath test:

"1. Your driver's license will be suspended for 90 days.

"2. Upon your request, you will be granted a hearing. If the hearing result is adverse to you, you may appeal the matter to the circuit court for a trial.

"3. You will be permitted, upon your request and at your own expense, reasonable opportunity to obtain the services of a doctor or surgeon, licensed nurse, qualified technician or chemist of your choosing to administer a chemical test or tests to determine the alcohol content of your blood, *in addition* to the one given by a police officer.

"Do you understand what has just been read to you? Will you now take a breath test to determine the alcoholic content of your blood?

"Requesting officer    *Dennis Carmody*

"Date    *March 19, 1971*

"Time    *11:12 pm*

"Arrestee    *George C. Stavros*

"Witness(es)    *Mel Hedgpeth*

"I have been informed of items 1, 2 and 3 above:

"Arrestee's
Signature  *Refused to sign"*①

On direct examination plaintiff testified that he observed Officer Carmody filling in blanks on the document. His testimony continued:

"Q   Did you know what he was asking you to sign?

"A   The implied consent thing, saying if I didn't sign it, if I didn't take the breath test, that I would lose my license.

"*   *   *   *   *

"Q   Now, you testified earlier, I believe, that you had some comment made—that the officer when he was preparing the report told you what would happen if you didn't take the breathalyzer—can you explain that? Did the officer tell you that if you refused to take the test your license would be suspended for 90 days?

"A   Yes, and I read the line.

"Q   Did he tell you that an administrative hearing could be had upon request if that license was so suspended?

"A   I don't believe that part got in.

"Q   Did he tell you that even if there was an administrative hearing such as that, that you could appeal to the Circuit Court?

"A   I felt after the treatment I had already had at the time —

"THE COURT:   Just answer the question.

"THE WITNESS:   No.

"Q (By Mr. Hannon)   Were you informed by any of the officers, Officer Carmody or Officer Yeager, that you had the right to request you [sic]

---

① Most of the above form is printed. The italicized portions set out above are handwritten entries made on the form by Officer Carmody, who arrested plaintiff.

own doctor, nurse or some medically trained person to make a test upon you to determine the alcohol blood content—were you advised of your rights as a suspect to have that done?

"A I read that, but I was refused an opportunity to make a telephone call—I don't know how I could have done it."

On cross-examination plaintiff's testimony concerning the document was as follows:

"Q Mr. Stavros, let me hand you that document which has been marked for purposes of identification as Defendant's Exhibit Number 1, and that portion which is appended to the bottom, which deals with the rights and conditions of the refusal to take the breath test—do you recognize that part?

"A Yes.

"Q Is that the part that you read?

"A Yes.

"Q Did you read it thoroughly?

"A I don't think I read it thoroughly, no.

"Q But you read that part of the document?

"A The first line—you mean Number 1?

"Q The document itself, there are about four or three lines, are there not?

"A Again, I wasn't in too good shape then.

"Q The question is, did you read that document?

"A I looked at it.

"Q You recognized that document you have in your hand?

"A Yes.

"Q *Did Officer Carmody read that document to you?*

"A *Yes.*

"Q And this is the document that you refused to sign, is that correct?

"A Yes." (Emphasis supplied.)

The relevant statute requires that plaintiff have been *informed* of certain rights and consequences of his refusal. ORS 483.634(2). It does not require that he fully *understand* the information he is given. If it did, the only drivers who would be subject to the consequences of refusal would be "those who were not sufficiently intoxicated to interfere with their mental processes." *State v. Fogle,* 254 Or 268, 270, 459 P2d 873 (1969).

■ The trial judge accurately defined the word "informed" when he instructed the jury:

"* * * [A] person is to be considered informed of the applicable provision of the implied consent law, including the rights and conditions thereof, if the provisions of the law have been read to him or he reads the provisions himself."

■ Based on plaintiff's affirmative answer to the question, "Did Officer Carmody read that document [quoted, supra] to you?," the trial judge should have directed a verdict for the defendant on the issues covered by the third and fourth interrogatories. *Andros v. Dept. of Motor Vehicles,* 5 Or App 418, 485 P2d 635 (1971); *Thorp v. Dept. of Motor Vehicles,* 4 Or App 552, 480 P2d 716 (1971).

■ Plaintiff seems to further argue that even if he was informed of his right to a privately-administered additional chemical test to determine the alcoholic content of his blood, the suspension of his license was nevertheless invalid on statutory and constitutional grounds because he was never permitted to make a phone call to arrange for a doctor to administer an additional test. Plaintiff testified he repeatedly requested to use the phone when in the "operations center," the "booking center" and when he was trans-

ferred from one cell to another. However, at no time did he state to the police that he wished to call a doctor to arrange for a privately-administered chemical blood test. In fact, most of his requests to use the phone were made in the "operations center," or "booking center" before he was taken to the breathalyzer room and told of the existence of this right.

■ In any event, plaintiff did not object to the case's going to the jury solely on the four special interrogatories set forth above. In effect, he thus stipulated that the issue of whether he was permitted to make a phone call was not determinative. *See, Archambeau v. Edmunson,* 87 Or 476, 171 P 186 (1918).

On this record we do not reach the question of whether a refusal to let an arrested driver use the phone to arrange for a private additional chemical blood test would invalidate a driver's license suspension for failure to submit to a breathalyzer test.

Reversed.

THORNTON, J., dissenting.

The majority opinion sets out the plaintiff's testimony on both direct and cross-examination. Certainly this testimony, on its face, appears contradictory. However, the testimony given by the plaintiff on cross-examination may be somewhat ambiguous in that plaintiff throughout this exchange with the assistant attorney general may have been referring only to "* * * [t]he first line," and not the entire rights document. It is possible he may not have followed and understood the line of questioning.

The majority, reading the record, does not agree with this textual analysis. However, significantly, the

trial judge having heard the testimony and observed the plaintiff and other witnesses, found the evidence sufficient to submit to the jury. The jury, also having the benefit of direct observation, then found for the plaintiff, resolving contradictions and ambiguities in his favor.

Amended Art VII, § 3, Oregon Constitution, provides:

"* * * [N]o fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict * * *."

The resolution of evidentiary conflict is a jury function. *State v. Glasburn,* 116 Or 451, 241 P 846 (1925). I am unable to see how we can, consistent with the above constitutional limitation, focus on one portion of contradictory testimony, such as plaintiff's statements on cross-examination, and hold that the testimony must be controlling, and that the jury would have had to believe it.

On appeal from a denial of judgment notwithstanding the verdict we review the evidence in the light most favorable to the party awarded the judgment, here the plaintiff. "* * * A judgment n.o.v. ought not to be granted if there is any substantial evidence to support the verdict." *Austin v. Sisters of Charity,* 256 Or 179, 183, 470 P2d 939 (1970); *Durkoop v. Mishler et al,* 233 Or 243, 378 P2d 267 (1963).

I feel that the majority on this appeal has not adhered to these standards of review. Therefore I respectfully dissent.