Argued October 25, 1976, affirmed March 3, 1977

RESERVE INSURANCE COMPANY, *Appellant,*
*v.*
STAAL, *Respondent.*
(No. L-3909, SC P-2482)

560 P2d 1082

Frederick T. Smith, Portland, argued the cause for appellant. With him on the briefs were James C. Waggoner, and Martin, Bischoff, Templeton & Biggs, Portland.

Steven J. Joseph, La Grande, argued the cause for respondent. With him on the brief was Carey & Joseph, La Grande.

Before Denecke, Chief Justice, and O'Connell,* Holman, Tongue, Howell, and Bryson, Justices.

BRYSON, J.

*O'Connell, J., term expired January 3, 1977.

**BRYSON, J.**

Plaintiff brought this action as subrogee of Baker Aviation, Inc., to recover damages to its insured's aircraft. Defendant, a pilot and bailee for hire, crashed the plane on take-off at Ukiah, Oregon. Judgment was entered in favor of the defendant on the jury's verdict, and plaintiff appeals.

This case involves the legal duties of a bailor (plaintiff's insured) and its bailee for hire (defendant) and which of the two bears the loss for damages to the bailed aircraft. In *Hines Lumber Co. v. Purvine Logging Co.,* 240 Or 60, 63, 399 P2d 893 (1965), we stated:

> "The plaintiff argues further that, even if the bailee is not to be held liable without fault, a doctrine akin to that of *res ipsa loquitur* supplies the necessary inference of negligence and shifts to the bailee the duty of explaining the fire in a manner consistent with the exercise of due care on the part of the bailee. This question was probed in detail in *National Fire Ins. Co. v. Mogan et al,* 186 Or 285, 291-293, 206 P2d 963 (1949). We held that, after it had been shown that the goods had not been returned, the burden of going forward with the evidence shifted to the bailee. We also observed, in passing, that if the bailee could explain why the goods were not returned, as by showing that a fire occurred without fault on the bailee's part, such a showing would absolve the bailee from liability. We adhere to the views expressed in *National Fire Ins. Co. v. Mogan et al.*"

*See also Liberty Mutual Fire Ins. v. Hubbard,* 275 Or 567, 551 P2d 1288 (1976). *Accord,* McCormick on Evidence 808-09, § 343 (2d ed 1972).

Defendant's affirmative defense alleges in part as follows:

"* * * * *.

"II.

"On or about August 5, 1974, when the Defendant rented the aforesaid aircraft, from Baker Aviation, Inc., and at the time of delivery thereof, said aircraft was warranted as being in good condition and air worthy.

[ 441 ]

"III.

"At the time of Defendant's flight on or about August 5, 1974, said airplane was defective by reason that the aircraft had not, within the immediately preceding 12 calendar months, been approved for return to service following inspection performed in accordance with Part 43 of the Federal Aviation Regulations.

"IV.

"On or about August 5, 1974, the Defendant, while exercising reasonable and ordinary care, attempted a normal takeoff from an airstrip.

"V.

"On or about August 5, 1974, at the time of Defendant's attempted takeoff, said airplane, by reason of its defective condition, did not deliver sufficient power to takeoff and as a proximate result of such lack of power said aircraft crashed."

After both parties rested, plaintiff moved to strike the affirmative defense, stating:

"At this time the plaintiff would move the Court to withdraw the defendant's first affirmative defense from consideration by the jury on the ground that there is no evidence upon which reasonable men could conclude that there is a proximate casual [sic] relationship between the alleged failure to comply with the federal regulations in that it was not either inspected as an annual inspection as distinguished from a hundred-hour inspection and that the same was not reported in the logbook."

The court denied the motion, and plaintiff assigns this as error.

■ We view the evidence in the light most favorable to the defendant, the party aided by the verdict. *Kuffel v. Reiser,* 268 Or 152, 155, 519 P2d 365 (1974). We note that plaintiff's motion was to strike the entire affirmative defense but the argument or reason for doing so was directed only to paragraph III wherein it is alleged that the aircraft had not been inspected and approved for return to service in accordance with FAA regula-

tions. The trial court raised this distinction, stating:

"THE COURT: Maybe the certification doesn't have any significance, but I'm wondering if the failure * * * to have the motor in proper working condition, that is, that the—they probably have got some—enough evidence to go to the jury on the basis that the airplane is warranted by mere act of bailment—that it was not powered sufficiently."

■ The affirmative defense consisted of two defenses: failure to comply with the FAA regulations requiring that the plane be inspected, and the "defective condition" and "lack of power" of the aircraft. Under these circumstances, we conclude that, based on the plaintiff's motion, the court did not err in denying the motion to strike the entire affirmative defense as no objection was made to relevant parts thereof.

The facts show that the aircraft did not gain altitude by the time it reached the end of the runway and crashed into a fence. Defendant's theory and defense is that he, as bailee, used reasonable and due care but the plane was defective and did not have "sufficient power to take off," and therefore the accident occurred without fault on his part. To support this allegation in his affirmative defense, defendant offered the testimony of Mr. Dix and Mr. Mayes. Mr. Dix was a student flyer and Mr. Mayes was his instructor, using the plane here involved after it had been repaired and returned to service. They both testified that the plane had magneto trouble when they operated it on May 8, 1975, some nine months after the accident.

Mr. Dix testified:

"Q   And you first started taking lessons on May the 8th, 1975?

"A   Yes.

"Q   On the first day that you took a lesson did you experience any difficulty with the aircraft?

"[Plaintiff's counsel]: Objection. It's irrelevant."

[ 443 ]

Following an extended colloquy between the court and counsel, the plaintiff further objected to the testimony of Mr. Dix on the ground that any testimony regarding a defective motor on May 8, 1975, was too remote from the time of the accident to be of any probative value.

Mr. Mayes, the instructor, testified:

"Q * * * Mr. Mayes, on the first day that Mr. Dix flew in this particular aircraft did—were there any problems that developed during the run-up on the magnetos?

"A Yes, sir. On the first lesson we had we experienced a left mag run-up. It dropped approximately two hundred fifty rpm."

We note from the transcript that there was no objection to this and other similar testimony on the part of Mr. Mayes regarding the improper operation of the aircraft motor, and appellant's brief does not set forth any objection.

■ We have generally held that evidence of actions and conditions remote in time and distance from the place of an accident are inadmissible. *Ramp et al v. Osborne et al,* 115 Or 672, 677, 239 P 112 (1925); *May v. Mack et al,* 225 Or 278, 284, 356 P2d 1060 (1960); *Cox v. Jacks,* 268 Or 180, 184, 519 P2d 1041 (1973).

■ We have also held such remote evidence to be admissible if there is other evidence from which the jury could find that certain negligent conduct "fits into a pattern with the other evidence." *Shoopman v. Long,* 252 Or 341, 449 P2d 439 (1960).

In *Yates v. Stading,* 219 Or 464, 474, 347 P2d 839 (1959), we held:

"* * * However, it is also a general rule that whether evidence of the speed of an automobile just prior to an accident is or is not too remote depends upon the facts of the particular case and rests largely in the discretion of the trial court. *Hanson v. Schrick,* 160 Or 397, 85 P2d 355; *Martin v. Oregon Stages, Inc.,* 129 Or 435, 277 P 291."

*See also* dissenting opinion of Justice Tongue in *Carter v. Moberly,* 263 Or 193, 208, 501 P2d 1276 (1972).

In this case the court was confronted with evidence remote in time pertaining to the operation of a piece of machinery as distinguished from a human actor, such as an automobile driver.

■ Where the condition or operation of a non-living thing is in question, the only issue should be whether the one offering the evidence has established a foundation that the object is in substantially the same condition as it was at the time of the accident.

> "The general logical requirement is, then, that when a thing's capacity or tendency to produce an effect of a given sort is to be evidenced by instances of the same effect found attending the same thing elsewhere, these other instances have probative value—*i.e.* are relevant— to show such a tendency or capacity *only if the conditions or circumstances in the other instances are similar to those in the case in hand.*
>
> "But this similarity need not be precise in every detail. It need include only those circumstances or conditions which might in experience have some influence in affecting the result in question. * * *" (Emphasis theirs; footnote omitted.) 2 Wigmore on Evidence 425, § 442 (3d ed 1940).

In 1 Conrad, Modern Trial Evidence 75, § 61 (1956), it is stated:

> "Whether evidence as to the condition of property or a thing before or after the event is relevant to prove its condition at the time of the occurrence depends to a large extent on the character of the property or object and the nature of the condition sought to be proved as constant or variable, existence of change during intervening period and, to some extent, on the length of such period. Generally where there is no change in condition of property or objects before or after the event in issue, evidence of condition before or after the event is relevant to show the condition at the time of the event, if it relates to such issue and is not too remote. If conditions have changed or are dissimilar, such evidence of condition

[ 445 ]

after the event is not relevant or competent." (Footnotes omitted.)

■ Here the defendant established a foundation that the plane's engine, and the magneto in particular, was in substantially the same condition as it had been at the time of the accident. There is a conflict of evidence based on the tachometer time recorded in the logbook and the time sheets recorded from the engine's hour meter recorded on rental flights of this particular aircraft. The jury could have found that the hours flown were as few as 9.3 or as many as 32.3. From our review of the evidence, it would appear that the engine had been operated a total of 11.4 hours from the time it was placed back in flying condition after the accident until May 8, the time that Mr. Dix and Mr. Mayes referred to in their testimony.

In *Carter v. Moberly, supra* at 200, we stated:

> "* * * If the evidence has some probative value, but also presents difficulties such as those mentioned above, the judge must determine whether the value of the evidence outweighs, or is outweighed by, the offsetting considerations * * * [and the judge is required] to weigh the value of the evidence in light of all the circumstances of the particular case, and his conclusion, if it is reasonable, will not be disturbed on appeal. * * *"

Under the circumstances of this case, we find the defendant's evidence of magneto problems and a rough motor not to have been so devoid of probative value as to render it inadmissible. Also, there is the further evidence of Mr. Mayes which was received without objection on the part of the plaintiff.

Affirmed.