**Dora GAITSKILL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. T–817.**

United States District Court, D. Kansas.

March 16, 1955.

Colmery & Smith, E. Edward Johnson, and Eugene W. Davis, Topeka, Kan., for plaintiff.

Milton P. Beach, Asst. U. S. Atty., Topeka, Kan., for defendant.

WALLACE, District Judge.

The plaintiff, Dora Gaitskill, a Kansas citizen, brings this action against the United States pursuant to the Tort Claims Act to recover damages for personal injuries she received when she slipped and fell on a snow-covered hospital ramp while visiting her husband who was a patient at the Winters Veterans' Hospital in Topeka, Kansas. Plaintiff alleges that her injuries were directly caused by the negligence of Government hospital employees in failing to take proper precautionary steps to make the ramp in question safe for walking. By way of defense, the Government denies that it or any of its employees were in anyway guilty of negligence; and, in addition specifically urges: (1) that plaintiff was a bare licensee to whom the Government only owed the duty to refrain from affirmative acts of negligence; and, (2) that, in any event, plaintiff herself was guilty of negligence which contributed to her own injury.

The evidence indicates that on January 24, 1952, the plaintiff went to the VA hospital in question in response to a telegram from the hospital advising plaintiff that her husband, a patient in such hospital, was seriously ill.[1] Upon arrival, plaintiff was assigned by an employee of the VA, to Room No. 4 in building T–7 located on hospital premises.[2] This assignment to quarters was recorded on a VA form; and, plaintiff was charged 50¢ a day for such quarters.[3] Building T–7 is a one story barracks type brick building containing a hall which runs the length of the building (east and west) with the rooms adjoining the hall. At the east end of the building a door opens on to an inclined wooden ramp, which ramp leads to the hospital wards and offices. Such ramp is customarily used by occupants of the guest quarters to go to the various wards and offices.[4] After plaintiff's arrival it was her custom to stay at her husband's bedside during the day and return to her quarters each evening. On the morning of March 3rd, a little after 10 o'clock a. m. the plaintiff left her quarters to go to her husband's ward. As she stepped out of the door of the barracks on to the previously described ramp and while stepping to grasp the handrail, she slipped and fell on some snow which had accumulated on the ramp during the night.[5] At the time of such fall nothing had been done by hospital employees to clear the ramp of snow; nor, had any abrasive substance, such as ashes or sand, been placed on the ramp to render the ramp safe for walking.

The Court is of the opinion that the just recited facts entitle plaintiff to recover from the Government for the injuries she sustained. Conceivably, plaintiff could have proceeded in such a manner as to have avoided the instant fall;[6] however, there is no evidence before the Court which establishes that the plaintiff under the existing circumstances failed to exercise ordinary care for her own safety;[7] and, the Court is convinced that had the VA hospital officials exercised ordinary care under the

1. The telegram in question read: "Mrs. Dora Gaitskill, Girard, Kansas. Your Husband, Joseph Gaitskill, now considered seriously ill—Manager VA Hospital."

2. Building T–7 is maintained for the purpose of housing close relatives of seriously ill patients, or others whose presence is desirable or required because of the condition of patients in the hospital.

3. Plaintiff paid 50¢ a day from the date of her arrival, January 24th through March 6th.

4. The ramp is covered with a roof but has open sides, except for handrails on each side.

5. When the plaintiff returned to her quarters about 10:00 o'clock p. m. the evening before the accident it was snowing, but no snow had yet gathered on the ramp.

6. One VA employee, a maid, testified she used the ramp and kept from falling by holding onto the door leading from the barracks, swinging it clear open until she could reach the hand rail on the ramp.

7. Under Kansas law the use of this ramp, even though in a dangerous condition does

existing conditions that the injury to plaintiff would have been avoided. Said officials should have anticipated that the inclined ramp in question would be extremely dangerous when covered with snow; and, inasmuch as such ramp was regularly used by guest visitors, to the knowledge of the VA officials, some precautionary steps should have been taken prior to the time of plaintiff's fall and injury to keep the ramp in a safe condition. Ordinary reason recognizes that the incline of the ramp made such walkway much more dangerous than walks constructed on the level and some special attention should have been given such ramp to reduce the hazard.

In connection with the Court's ruling the following conclusions of law are given:

1. The Court has jurisdiction over the parties and over the subject matter of this action.[8]

■ 2. Plaintiff, at the time of her injury, occupied the status of a business invitee; and, the VA hospital owed her the duty of exercising ordinary care for her welfare and safety.[9]

■ Plaintiff is entitled to judgment for $10,000 to pay for past medical expenses and those reasonably to be anticipated in the future, for pain and suffering, past and future, for temporary total disability and permanent partial disability, all of which damage was suffered as a direct result of the defendant's negligence.[10]

Within 15 days counsel should submit a journal entry which conforms with this opinion.

not make plaintiff contributorily negligent as a matter of law but such issue remains a question of fact under the particular circumstances. Read Ade v. City of Wichita, 1935, 141 Kan. 497, 41 P.2d 734; Dunfee v. City of Iola, 1914, 92 Kan. 121, 139 P. 1029; Spencer v. Kansas City, 1914, 92 Kan. 161, 139 P. 1029 (1914). See, Gryning v. City of Philadelphia, 269 Pa. 277, 112 A. 448, 13 A.L.R. 73, dealing with "contributory negligence in falling on slippery walk."; and, cf. particularly observation of annotator at page 81 that "It is a matter of common knowledge that ice on a sidewalk often can be walked over with safety, so it must be an exceptional case where an attempt to pass over such ice can be said to be negligence as a matter of law. (citing authority)"

8. See 28 U.S.C.A. §§ 2671–2680. Also, see 28 U.S.C.A. § 1346(b) which provides in part: " * * * the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

9. As mentioned by Judge Bratton in Parks v. Montgomery Ward & Co., 10 Cir., 1952, 198 F.2d 772, 774, although a storekeeper is not an insurer of the safety of his customers or invitees, "It is the law in Kansas that a merchant owes to his patrons and invitees the duty to maintain his premises in a reasonably safe condition, and that his failure to do so constitutes negligence. While the responsibility may vary according to circumstances, the general duty exacted of such a merchant is the exercise of ordinary care which means the degree of care that an ordinarily cautious and prudent storekeeper would exercise under the same or similar circumstances to protect his customers and invitees from danger. (Citing authority.)" Distinguish St. Mary's Hospital v. Scanlon, 8 Cir., 1934, 71 F.2d 739 wherein plaintiff was a bare licensee having entered hospital as private patient, was discharged therefrom and on physician's request was permitted by hospital, pending relatives' arrival, to occupy room in maids' home formerly occupied by plaintiff as hospital's employee, and was injured by falling from window there while walking in sleep.

10. In the instant accident plaintiff fractured the neck of her right femur. Two days after the accident an attempt was made by plaintiff's surgeon to "pin" the broken bone together by means of a surgical nail. Following this first operation plaintiff was confined to a wheel chair 6 months. On December 19, 1952, fur-

ther surgery became necessary. The head of the right femur was removed and a metallic bone replacement (a femoral prosthesis) inserted. Immediately after the second operation plaintiff was required to lie on her back for about three weeks with casts from her ankles to her knees with her feet braced and immobilized more than two feet apart. Such injury and treatment thereof were extremely painful. Plaintiff's physician testified that plaintiff had a 25% permanent partial disability in her right leg due to the injury; and, that plaintiff will always walk with a noticeable limp inasmuch as the injured leg is one inch shorter than her left leg. In addition, the doctor testified there is no medical assurance that the prosthesis inserted in plaintiff's leg will remain secure and in place; and, there is no certainty that the injured limb will not continue for the balance of plaintiff's lifetime to be the source of varying degrees of pain. (To date plaintiff has incurred over $2500 expense for medical treatment and hospital and other care.)