Argued July 30, reversed August 8, 1958

ANDERSON *v.* OREGON CITY HOSPITAL CO.

328 P. 2d 769

*Glenn R. Jack* and *Philip A. Levin* argued the cause for appellant. On the briefs were Jack, Goodwin & Santos, Oregon City, and Philip A. Levin, Portland.

*Mark C. McClanahan,* Portland, argued the cause for respondent. With him on the brief were King, Miller, Anderson, Nash & Yerke and Norman J. Wiener, Portland.

Before ROSSMAN, J., Presiding, and LUSK, WARNER, SLOAN and O'CONNELL, Justices.

SLOAN, J.

This is an appeal by the defendant from a judgment in the sum of $12,217.25 which the circuit court

entered in favor of the plaintiff. The judgment is based upon a jury verdict. The complaint charged the defendant with negligence in the maintenance of the floor of the hospital's corridor and, referring to the defendant, states:

> "It created and maintained a hazardous and dangerous condition of extreme slickness and slipperyness on the floor of said corridor."

The first assignment of error challenges a ruling which denied the defendant's motion for a directed verdict.

The accident in question occurred on March 11, 1956. Plaintiff had entered the defendant hospital to visit her husband who was confined there by illness. She was an invitee. She was accompanied by her sister-in-law. The accident is described by plaintiff as follows:

> "A I walked in to the main entrance and back to the corridor, turned right—I don't know exactly how many feet that it is but I walked down quite a few, about 25 or 30 feet I suppose, whatever it is, and we were nearing the chart room when suddenly what seemed to be a slippery spot, I hit a slippery spot and we were walking in a normal manner and my feet slipped out from under me. I sat down hard.
>
> "* * * * *
>
> "Q Well, now, would you describe what, if anything, you felt when you came to this spot with your feet?
> "A They just slipped out from under me and I couldn't catch myself or anything. I just went right down.
>
> "Q Did it feel more slippery or less slippery at that point than the hall had felt prior to that spot?
> "A Oh, yes. I didn't—just right there is where I noticed the slipperiness."

It is to be noted that the accident occurred near the chart room door.

The floor of the corridor was covered with linoleum. The defendant waxed the linoleum every two or three months. The last general waxing had taken place more than a month before the plaintiff's injury. From time to time the defendant's janitor waxed and buffed small areas that needed attention of that kind. This is referred to in the record and briefs as "spot waxing."

This was described by the janitor who performed the work. He testified that in those areas of heavier traffic or where food or medicines were spilled such areas would be cleaned with a strong cleaner, the old wax removed, new wax applied and the entire surface buffed by a buffing machine. The entire floor area of the corridor was buffed each morning.

In order to sustain plaintiff's position we must infer that the method of spot waxing created "islands" or areas where the floor would be ipso facto dangerously slick, and that such an area existed at the place of plaintiff's fall. The plaintiff asserts that inasmuch as the fall occurred in an area where medicines are carried, then we must assume that some had been spilled and so-called "spot waxing" resulted. If this were so we would then be obliged to go one inference further and assume that this had occurred within a reasonably short period of time prior to the incident in question. If there were some evidence to establish these facts such inferences could conceivably be drawn. In this regard the only direct testimony is that of the janitor. His testimony, by deposition, was presented by plaintiff. When asked if he "specifically remembered" waxing the area outside the chart room, he replied: "I don't remember. Because it would be pretty hard to

remember every little place you put it on, and that place in front of the chart room usually didn't get much spillage, because it was a chart room and there wasn't no medicines usually taken in there." We are left then with no evidence upon which to base the inference suggested.

The only conceivable evidence indicating that the place of the fall was in any different condition from the remainder of the floor is the testimony of plaintiff heretofore quoted, and that of her sister-in-law who accompanied her. The sister-in-law described the incident in this way:

"A Well, it just felt slippery. I was walking along normally when just, I noticed it was under my feet that it was so slick that I was going to have to change my walking or else I would fall."

Upon cross-examination she explained:

"Q Then as I understood you to say you had noticed the floor was slippery and you were just going to speak to your sister-in-law when she fell, is that right?
"A That is right.

"Q And for how many steps did you notice that condition, Mrs. Anderson?
"A Well, it was just all at once. It wasn't by minutes or anything. It was just sudden, right now, because before I could reach over and tell her she was on the floor. There wasn't any time before.

"Q It was just that instant?
"A Yes, sir. Just right now.

"Q It wasn't over taking one or two or three steps?
"A No, sir.

"Q You just noticed it with putting down your foot?
"A With my foot, when I was walking, yes.

"Q There was nothing on the floor that you could see?

"A I did not see anything on the floor.

"Q There were no objects on the floor?

"A No, sir.

"Q You saw your sister-in-law fall and you were there with her, weren't you?

"A Yes, sir."

This is the only evidence in the record to sustain the charge of "hazardous and dangerous condition" or upon which we can sustain this judgment. The physical facts do not support these assertions. Other witnesses, called by plaintiff, testified there were no "skid marks" on the floor to indicate plaintiff's foot had slipped or skidded. There was no wax or other substance found on plaintiff's clothing. The immediate floor area was no different in appearance from any other part of the floor. There was no unpolished wax. There was no evidence that the method of cleaning and waxing the floor was improper or tended to create any hazard. As previously stated there was no actual evidence that this area had been waxed more recently than the general waxing more than a month prior to this event. There is other uncontradicted evidence that the defendant used a standard product widely used as a slip-resistant wax; that such product was approved by the Underwriters Laboratories and that defendant applied and used it in accordance with the directions of the manufacturer.

It has been consistently held that waxing a floor is not negligence. *Briggs v. John Yeon Co.*, 168 Or 239, 122 P2d 444. There is no evidence to show any lack of due care in the method here employed for this purpose, either by commission or omission.

We believe this case to be governed by *Vinson v. Brown,* 193 Or 113, 237 P2d 501. And, as therein stated: "We deem it unnecessary to review herein the several citations contained in plaintiff's brief." To this effect also see *Briggs v. John Yeon Co.,* supra. The assignment of error must be sustained. To hold otherwise would require that the caretaker of any public place could only apply wax upon a floor at his peril.

The judgment is reversed.