Argued June 5, reversed and remanded September 10, 1973

McVAIGH, *Appellant, v.* SANDBERG ET AL,
*Respondents and Cross-Appellants.*

513 P2d 801

*Stephen A. Hutchinson,* Eugene, argued the cause for appellant. With him on the briefs were Hutchinson, Harrell & Cox, Eugene.

*Paul D. Clayton,* Eugene, argued the cause for respondents and cross-appellants. With him on the brief were Luvaas, Cobb, Richards & Fraser, Eugene.

HOLMAN, J.

Plaintiff brought an action for personal injuries resulting from a fall in defendants' pharmacy. Pursuant to a jury trial, a verdict was entered for plaintiff, but the trial judge set it aside and entered a judgment n.o.v. for defendants on the ground there was no evidence of defendants' negligence. Plaintiff appeals. The principal issue is whether there was evidence sufficient to submit to the jury of any condition of the premises which created an unreasonable risk of harm to plaintiff.

Plaintiff was a woman 65 years of age. She entered defendants' pharmacy on a rainy Tuesday morning and, after wiping her feet on a mat inside the doorway, proceeded to walk down one of the pas-

sageways between displays of goods. When she was halfway down the aisle she fell.

The accident was alleged by plaintiff to have happened as follows:

"* * * That inside the store in an aisle near the pharmacy counter, in an area where customers normally walked, the defendants allowed water or other slippery material to accumulate upon the floor. As plaintiff stepped into the area, she was caused to fall by reason of the slippery condition of the floor and the water or other slippery substance that remained upon the floor, * * *."

She claimed defendants were negligent in the following particulars:

"1) In allowing water or other slippery material to accumulate on the floor * * *.

"2) In failing to remove the water or other slippery material from the floor * * *.

"3) In failing to warn customers * * * of the dangerous slippery condition of the floor * * *.

"4) In failing to properly inspect the floors * * *."

Plaintiff's testimony about her fall was as follows:

"Q. On the 1st of December, 1970, did you have occasion to go into Maynard's Pharmacy?

"A. Yes. I went in there quite often. They have a very nice selection of cards, but when I went in there and got halfway down the aisle, there were two racks with colored glasses on them, and I went to go around them and that's when my feet went out from under me and that's the last I remember.

"* * * * *.

"Q. Well, now you said your feet went out from under you, is that right?

"A. Yes.

"Q. Did you slip or just one of them go or start or did both?

"A. Everything just went out. I just felt like the whole building went down on me."

Plaintiff also testified that Mrs. Sandberg, one of the defendants, made the following statement:

"Q. Did either Mr. or Mrs. Sandberg say anything to you about your falling?

"A. Well, Mrs. Sandberg kept saying—of course all the time I thought she was a clerk—she kept saying there's been several people slipping but none of them went down. You're the first one to go down. She said the man's using a new kind of wax."

A customer testified that Mrs. Sandberg said as follows:

"Q. Do you recall Mrs. Sandberg saying anything about the condition of the floor?

"A. She said something—no. She said a couple people had told her that they had kind of slipped on it, but that's all.

"Q. Did she say whether anybody had fallen down before?

"A. No—, would you say the question again?

"Q. Well, you said that Mrs. Sandberg said that several people had slipped on it before?

"A. Yes.

"Q. Okay. Did she say that any of those people had fallen before?

"A. No.

"Q. Did she say anything about why they had slipped before?

"A. No.

"* * * * *.

"Q. (By Mr. Hutchinson) Would you tell us what was said?

"A. Okay. Mrs. Sandberg mentioned that she had talked to or was going to talk to the man about the wax. That's all I remember."

Still another customer testified to the following statement by Mrs. Sandberg:

"Q. Do you recall Mr. or Mrs. Sandberg saying anything about the floor?

"A. Just that she was going to check with the janitor, and that was all.

"Q. Did she say why she was going to check with him?

"A. No."

There was no evidence of any unevenness in the floor at the place where plaintiff fell. There was no *direct* evidence of any water, excess wax, or other substance upon the floor. There was no evidence of any shoe mark made by plaintiff where she fell. No one testified that there appeared to be anything unusual or noticeable about the place at which she went down.

■ Because the jury found for plaintiff, the evidence must be viewed on appeal in a manner as favorable to plaintiff as the testimony will permit.

■ It is argued that plaintiff did not testify she slipped but rather that "my feet went out from under me." We believe plaintiff's expression could have been treated by the jury as another way of saying that she slipped. It is also contended that plaintiff failed to prove there was any specific substance on the floor which caused her to fall. We hold that it is unnecessary for plaintiff to prove what the substance was which caused the abnormally slippery condition of the floor,

if such condition is proved and defendants knew of it. The principal question is whether it can be inferred that the floor was covered with a slippery material, despite the fact that no one saw anything, since at least "several" people in addition to plaintiff had slipped and a new wax was being used.

There was evidence that defendants had misgivings about the condition of the floor. Otherwise, the statements about the new wax and the proposed inquiry of the janitor would not have been made. We hold that the jury could infer that the floor had become abnormally slippery since the use of the new wax. It could also infer that defendants were negligent in not doing anything about it prior to plaintiff's fall because they knew other persons had slipped. We therefore hold that the evidence of defendants' negligence which caused injury to the plaintiff was sufficient to go to the jury.

Defendants rely on *Delacroix v. Sanders,* 219 Or 494, 347 P2d 966 (1959); *Anderson v. Oregon City Hospital Co.,* 214 Or 212, 328 P2d 769, 71 ALR2d 431 (1958); and *Vinson v. Brown,* 193 Or 113, 237 P2d 501 (1951). In none of the cases was there any evidence that since the use of a new kind of wax the number of other people slipping on the floor was sufficient to excite the curiosity of the possessor of the premises to the extent that he proposed to make inquiry of the person who had waxed the floor.

Defendants filed a cross-appeal in support of a request for a new trial in the event the trial court's judgment n.o.v. in favor of defendants was not sustained upon appeal. Because we have held that the judgment n.o.v. was not properly granted, it is now necessary to consider whether error occurred which entitles defendants to a new trial.

■ Defendants contend that the trial court erred in not complying with their request to strike all testimony relating to a change of wax and to other people slipping since the wax was last applied, because such proof was not within the purview of the pleadings. We hold that this contention construes the complaint too narrowly. It alleged there was a slippery substance upon the floor which caused plaintiff to slip. Such allegations are sufficient to cover the evidence to which objection was made.

■ Defendants also contend that because of lack of proof the trial court erred in not removing from the jury's consideration each of the allegations of negligence in plaintiff's complaint. We have already held there was sufficient evidence of the accumulation of a slippery substance upon the floor of which defendants had knowledge. If this is so, submissible allegations of failure to remove, to warn and to inspect would follow as a matter of course.

■ Defendants contend the court erroneously allowed the following testimony over objection:

"Q. Why haven't you been able to work since your accident?
"A. Because I can't get any work without, you know, doing housework, and Doctor Rockey had told me not to do no lifting or do no ironing, and you can't hardly do housework."

It is contended by defendants that what the doctor told plaintiff is hearsay. The evidence was not used by plaintiff to prove that she could not lift or iron but to prove why she had not been working. If the words were spoken to her, they explained why she did not work, even though she may have been able to lift or to iron, had she tried. *See Utley v. City of Independence,*

240 Or 384, 392-93, 402 P2d 91 (1965); *Hryciuk v. Robinson,* 213 Or 542, 566, 326 P2d 424 (1958).

In any event, the admission of the evidence could not have been prejudicial because plaintiff's doctor testified, "I did not want her to use her arms in heavy lifting or to do anything that would tighten up the muscles in her neck and back."

■■ Defendants contend the trial court erred in not taking from the jury consideration of special damages by way of loss of earnings. Because plaintiff had not been working for three months prior to the accident, defendants argue that the evidence of her inability to work created a submissible question only of loss of earning *capacity* and not of special damages.

Plaintiff testified she would work each year until she had earned $1,680 at which time she would quit because she would lose part of a pension if she earned more. There was testimony she had earned $1,680 by the time the accident occurred in December, but that she had an agreement to recommence working on January 2 for one of her previous employers. This agreement was confirmed by that employer. However, this had been and was to be part-time work for which plaintiff had earned only $651 during the six months she had thus far worked for that employer. We hold there was evidence that she would have worked at that employment had the accident not occurred, which evidence was sufficient to entitle her to a special damage instruction pursuant to the rule laid down in *Conachan v. Williams,* 266 Or 45, 57-58, 511 P2d 392 (1973). However, the evidence was insufficient for the jury to find that plaintiff would have earned $1,600, the amount of lost wages alleged in her complaint. The evidence justified a finding that she would

have earned income at the rate of only $1,302 a year, or twice $651. Her employment was contingent upon the continued life of an elderly lady who was living with plaintiff's employer. That lady died December 14 of the year following plaintiff's accident. As a result, plaintiff's special damages should have been limited to 11½ months' employment at the rate of $1,302 per year, or the sum of $1,267.75, a reduction of $332.25 from the amount of the jury award for special damages.

It is argued that because there was no evidence of plaintiff's hourly rate of pay and no promise of a definite number of hours of work, it is impossible to determine with the degree of accuracy required for submission of special damages the amount she would have earned had she been able to recommence her employment. We hold that evidence of the amount which plaintiff previously earned in a given length of time from the same employer for doing the same work under the same conditions was a sufficiently definite basis upon which to submit a special damage instruction. *Fulton v. B. F. Goodrich,* 260 Or 245, 249, 490 P2d 178 (1971).

Lastly, defendants contend the court erred in failing to give two requested instructions. We hold that the subject of the instructions was adequately covered by other instructions which the court did give.

The judgment of the trial court is reversed and the case is remanded with instructions to enter a judgment upon the jury's verdict after deducting the sum of $332.25 from the award for special damages.

McALLISTER, J., dissenting.

In my opinion the trial court did not err in entering judgment n.o.v. for defendants. The evidence did not support a verdict for plaintiff. I dissent.