Argued February 6, affirmed April 17, 1975

LEA, *Appellant, v.* GINO'S PIZZA INN, INC.,
*Respondent.*
534 P2d 179

*Fred Allen,* Coos Bay, argued the cause and filed
a brief for appellant.

*Allan B. deSchweinitz,* of Haviland, deSchweinitz & Stark, Medford, argued the cause and filed a brief for respondent.

BRYSON, J.

Plaintiff was injured when she fell in defendant's pizza parlor. Plaintiff alleged that defendant was negligent in that it "[m]aintained a public facility without sufficient lighting for persons therein, more specifically the Plaintiff," and "[a]llowed some foreign substance to accumulate on the floor making a slippery and hazardous condition."

Judgment was entered in favor of plaintiff on a jury's verdict. On defendant's motion the trial court set aside the judgment and entered judgment n.o.v. in favor of defendant. Plaintiff appeals and assigns as error the court's order granting judgment for defendant n.o.v.

From our review of the trial court file and the transcript of evidence, it is apparent that the principal issue in the case is whether there was any evidence from which the jury could draw an inference that there was a "foreign substance" on the floor that caused plaintiff to slip and fall. Plaintiff offered no evidence of a "foreign substance" being on the floor.

The accident occurred at approximately 8 p.m. on May 26, 1973. Plaintiff and her companion took a table near a bay window. Plaintiff testified:

"A * * * As I stepped in, my right foot went out from underneath me and I just went right over backwards on back of the stool."

In her deposition, introduced as testimony at the time of trial, plaintiff stated:

"* * * [A]s I started to sit down, my feet

slipped out from underneath me and I went over the back of the stool. I really don't know exactly how it happened. My feet slipped out from under me and I went over backwards."

Defendant's manager testified:

"Q   On May 27, 1973, who was cleaning up the tables after the patrons had finished their pizza?

"A   Myself and Mike Jordan.

"Q   What is your general mode of cleaning things up? What do you do after somebody finishes their pizza and leaves?

"A   Well, when they leave we pick up the glassware and stuff first, usually. Then you take and any crumbs or anything that's left on the table, we brush them onto the pizza tray. And the people usually leave their stools out away from the table where they've been sitting. They don't usually put them back. So, we check under them to see if there's any foreign material on the floor, such as a slice of pizza or tomato, and pick it up and then move the stools back in; and if there's anything on the stools, we pick that up also.

"* * * * *.

"A   * * * I cleared the table as soon as they left.

"Q   Did you see any foreign substance on the floor?

"A   Nothing there that I could see, no.

"Q   Were you aware that there was any foreign substance under there at any time that evening?

"A   No."

The assistant manager went to the table when plaintiff fell. He testified:

"Q   Did she tell you how she fell?

"A   She missed the stool.

"Q She said she missed the stool. Did you check around the area of the table?

"A Yes.

"Q At that time did you observe any slippery or foreign substance at or near or around that table?

"A No.

"Q Was the lighting sufficient so that you could have seen some if there had been some there?

"A Yes.

"Q There was still light coming in from out-side?

"A Yes.

"Q It wasn't yet dark?

"A No.

"Q All the lights were on in the pizza parlor?

"A Yes."

Two other patrons sitting nearby also testi-fied that they could observe no "debris or any slippery-ness around or near" the table.

The plaintiff testified:

"Q Did you see any foreign substance on the floor?

"A No. I wasn't looking for anything foreign on the floor.

"Q * * * Did you ever check the floor with your hand or look at the floor at any time before or after you fell to see if there was any foreign substance, anything slippery, on the floor, any-thing at all.

"A I had no reason to check the floor.

"Q I'm just asking you whether you did or didn't.

"A I didn't check."

Plaintiff's dinner companion testified:

"Q And you didn't hear any comments about anything slippery on the floor at the time, and you didn't observe anything slippery on the floor underneath the table or anything like that?

"A No."

Plaintiff relies upon *McVaigh v. Sandberg*, 266 Or 409, 513 P2d 801 (1973), and states:

"* * * The case held that where a customer's feet went out from under her, there was sufficient evidence of a slip and that it was not necessary for the plaintiff to prove what the substance was. * * *"

It should be pointed out that in this case there is no evidence of any foreign substance on the floor where plaintiff's feet slipped. In *McVaigh v. Sandberg, supra,* the plaintiff slipped on a newly waxed floor in defendants' pharmacy. In that case plaintiff testified that Mrs. Sandberg, one of the owners, "kept saying—of course all the time I thought she was a clerk—she kept saying there's been several people slipping but none of them went down. You're the first one to go down. She said the man's using a new kind of wax." Another customer in the store testified:

" 'A. * * * Mrs. Sandberg mentioned that she had talked to or was going to talk to the man about the wax. That's all I remember.' "

In *McVaigh*, at page 415, we held "[t]here was evidence that defendants had misgivings about the condition of the floor. Otherwise, the statements about the new wax and the proposed inquiry of the janitor would not have been made. We hold that the jury could infer that the floor had become abnormally slip-

pery since the use of the new wax," and that this was sufficient evidence to go to the jury on the question of defendants' negligence. The two cases can certainly be distinguished on their facts.

■ We view the evidence in a light most favorable to the plaintiff. The following is a statement of the facts from plaintiff's brief on which she bases her contention that there was a foreign substance on the floor.

> "The plaintiff stated that she set the milk down, pulled the chair (stool) out and as she stepped in, her right foot went out from under her and she went over backwards on the stool hitting her head on the cement floor.

> "The plaintiff testified that the skirt she was wearing on that occasion had been cleaned and pressed prior to that evening and that it was clean. That after returning home, she found a spot on the back of the skirt and that the spot was still there. The skirt was offered into evidence. She stated there was nothing on the seat of the car as they rode to the defendant's establishment. That the portion of the skirt where the spotting occurred was exactly where contact was made with the floor. She stated that the skirt was wet as they left the defendant's establishment but that it dried out after it was taken home, but aside from the drying, it had not been altered in any way since the accident."

■ Plaintiff's testimony shows that the place where her body and dress contacted the floor was in back of the stool. She fell backwards over the stool. We find this evidence insufficient to enable the jury to infer that there was a foreign substance on the floor under plaintiff's feet which caused her to fall.

The defendant argues that "[t]he plaintiff is required by well established legal principle to produce

evidence from which reasonable men may conclude that, upon the whole, it is more likely that there was negligence than there was not," and that "[w]here the conclusion is a matter of mere speculation or conjecture, or where the probabilities are at best evenly balanced between negligence and its absence, the burden of proof has not been sustained," citing *Eitel v. Times, Inc.,* 221 Or 585, 352 P2d 485 (1960).

In *Arrow Trans. v. Northwest Grocery,* 258 Or 363, 366, 482 P2d 519 (1971), we quoted with approval from *Eitel v. Times, Inc., supra,* as follows:

"* * * In 2 Harper & James, The Law of Torts, § 19.4, p. 1068, it is stated:

"The test is often expressed in this way: where from the facts most favorable to the plaintiff the non-existence of the fact to be inferred is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be permitted to draw it. '[W]here the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof.'

"Prosser on Torts (2nd ed), § 42, p 200 expresses the same idea as follows:

"* * * What is required is evidence from which reasonable men may conclude that, upon the whole, it is more likely that there was negligence than that there was not. Where the conclusion is a matter of mere speculation or conjecture, or where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been sustained." 258 Or at 366.

*Accord,* Prosser, Torts (4th ed), § 39, p. 211.

■ Plaintiff also alleged that defendant was negligent in maintaining a public facility without suf-

ficient lighting for persons therein. Plaintiff's brief does not contend that the lack of lighting caused her feet to slip out from under her but, rather, because of the insufficient lighting she could not see the foreign substance on the floor. Assuming that plaintiff was caused to fall by slipping, there is no evidence in the record to prove, or from which the jury could draw an inference, that there was a foreign substance on the floor.

The judgment of the trial court is affirmed.

TONGUE, J., specially concurring.

The majority decides this case on the ground that the "evidence [was] insufficient to enable the jury to infer that there was a foreign substance on the floor under plaintiff's feet which caused her to fall." The testimony of plaintiff was that her dress was clean and dry when she entered the establishment and that it was wet and spotted after she fell. This, in my view, is some evidence that there was a foreign substance on the floor. Plaintiff also testified that her foot slipped out from under her causing her to fall. From this, the jury could properly infer that the foreign substance caused her foot to slip.

I agree, however, that there was no evidence from which the jury could have properly found that the substance had been on the floor long enough for defendant to have known of its existence, as required by our previous decisions in such cases.

It may be that such a rule should have no application in cases in which the lighting is inadequate. It may also be contended that defendant had a duty to provide adequate lighting to enable either himself or the plaintiff to see foreign substances on the floor. There was no evidence in this case, however, from which the jury could properly find that the

inadequate lighting was the cause of her fall and the case was not pleaded or tried on that theory.

For these reasons, I concur in the result reached by the majority, but not in the reasoning by which it reaches that result.