(932 P.2d 1041)
No. 76,638

LARRY R. WALTERS, *Appellant*, v. ST. FRANCIS HOSPITAL AND MEDICAL CENTER, INC., *Appellee*.

February 28, 1997.

*Alan G. Warner, Amy C. Bixler*, and *Margaret A. Graham*, of Warner, Bixler and Associates, L.L.C., of Topeka, for appellant.

*Thomas L. Theis* and *Jeffrey W. Jones*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., of Topeka, for appellee.

Before MARQUARDT, P.J., GREEN, J., and CAROL BACON, Distrct Judge, assigned.

MARQUARDT. J.: Larry R. Walters fainted and was injured at St. Francis Hospital and Medical Center, Inc., (St. Francis) while his fiancee, Mary Beth Burkett, was being treated.

Burkett was treated in St. Francis' emergency room and later admitted. Walters accompanied Burkett to her room. Burkett's treatment required insertion of a nasogastric tube. Prior to the tube

being inserted, a nurse explained the procedure to Burkett and Walters, who was standing at the side of Burkett's bed.

Before the procedure to insert the tube was even started, Burkett became distraught and began to scream. After a second attempt to insert the tube was unsuccessful, a nurse explained the procedure to Burkett and Walters again.

Burkett asked a nurse if Walters could stay and hold her hand during the next attempt to insert the tube, and Walters agreed to stay. In his deposition, Walters testified that "the nurse just asked me if I would . . . just help calm [Burkett] down and make sure she didn't move so much." The trial court found that "[i]t is disputed whether [Walters] merely held Ms. Burkett's hand or if he was also requested to restrain her during the procedure."

It is uncontroverted that Walters held Burkett's hand while the tube was successfully inserted. After the procedure, Walters either said that he did not handle sickness well or that he was not feeling well. Walters sat down in a chair near Burkett's bed, propped his elbows on his legs, and rested his head in his hands for a couple of minutes. Walters then rose from the chair, walked out of the room to the nurses' station, and stood there for a few moments, laying his head in his hands on the station's counter. Walters was asked if he was all right, and he replied that he was.

While standing at the nurses' station, Walters lost consciousness and fell to the floor. Walters was immediately treated and then admitted to St. Francis as a patient, having suffered a head injury that required brain surgery. Walters does not allege any negligence in the care that he received after his fall.

In granting St. Francis' motion for summary judgment, the trial court held that no reasonable person could conclude that St. Francis breached any duty to Walters. Additionally, the trial court held that the cause of Walters' injury was his decision to stay in the room with Burkett during the procedure and to then "wander the halls of the hospital while feeling ill," concluding that the requirement of proximate cause was not met.

Walters argues that the trial court erred in finding that no reasonable person could conclude that St. Francis breached any duty to him. St. Francis frames this issue differently and responds with

a threshold issue that it did not owe any legal duty to protect Walters from fainting while he accompanied a patient at the hospital.

The pivotal questions in this case are whether St. Francis owed a duty to Walters and, if so, what was the scope of that duty and was it breached? These issues have not been previously decided by Kansas appellate courts.

Summary judgment is appropriate when the documents on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c); *Boulanger v. Pol*, 258 Kan. 289, 295, 900 P.2d 823 (1995).

In *Nero v. Kansas State University*, 253 Kan. 567, 571, 861 P.2d 768 (1993), the court stated:

> " 'In a negligence action, summary judgment is proper if the only questions presented are questions of law. To recover for negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law. Whether the duty has been breached is a question of fact.' *Honeycutt v. City of Wichita*, 251 Kan. 451, Syl. ¶ 8, 836 P.2d 1128 (1992).
>
> The trial court, and this court on appeal, first must determine whether a duty exists. Without a duty, there can be no breach to support a plaintiff's claim. *Hackler v. U.S.D. No. 500*, 245 Kan. 295, 297, 777 P.2d 839 (1989)."

At trial, St. Francis argued that the case should be treated as a medical malpractice action while Walters argued that he should be considered a business invitee and, therefore, premises liability law should apply. The trial court held that premises liability law applied. We agree.

Walters does not claim medical malpractice. In order to prevail in a medical malpractice action in Kansas, a plaintiff must prove the following three elements: "(1) that a duty was owed by the physician *to the patient*; (2) that the duty was breached; and (3) that a causal connection existed between the breached duty and the injury sustained by the patient." (Emphasis added.) *Wozniak v. Lipoff*, 242 Kan. 583, 587, 750 P.2d 971 (1988).

Walters was not a patient at the time that he fell. Therefore, St. Francis owed Walters no "professional duty" under the theory of medical malpractice.

At trial, St. Francis argued that premises liability law was inapplicable because the case did not involve a physical defect in the land. However, premises liability law is not limited to cases where there is a physical defect. The Restatement (Second) of Torts § 341A (1964), states:

"A possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his *activities* with reasonable care for their safety if, but only if, he should expect that they will not discover or realize the danger, or will fail to protect themselves against it." (Emphasis added.)

See also *Kabo v. UAL, Inc.*, 762 F. Supp. 1190, 1194-95 (E.D. Pa. 1991) (citing § 341A, applying premises liability law, and holding that the dangers associated with lifting luggage at an airport were obvious as a matter of law).

In *Bowers v. Ottenad*, 240 Kan. 208, 222, 729 P.2d 1103 (1986), *overruled in part on other grounds Jones v. Hansen*, 254 Kan. 499, 509, 867 P.2d 303 (1994), the Kansas Supreme Court reviewed and clarified Kansas premises liability law when a licensee is injured *by activities* conducted upon the property of a possessor of land. While the distinctions made in *Bowers* are not relevant here, the import of *Bowers* for this appeal is that premises liability principles and the relevant standards of care govern the liability for activities.

Prior to *Jones*, 254 Kan. 499, the duty owed in Kansas by a possessor of land to an entrant on the land depended upon the common-law classification of the entrant. See *Gerchberg v. Loney*, 223 Kan. 446, 448-49, 576 P.2d 593 (1978), *overruled in part Bowers*, 240 Kan. 208. This change in the law is to be applied prospectively from the date of the *Jones* decision and, thus, does not apply to the facts of this case, which occurred in 1992. See *Mozier v. Parsons*, 256 Kan. 769, 771-72, 887 P.2d 692 (1995). The trial court incorrectly held that the new rule in *Jones* applied to the facts of this case and that St. Francis owed Walters a duty of reasonable care under all of the circumstances. Although the trial court arrived at this standard incorrectly, the correct standard is substantially equivalent.

Courts from other jurisdictions have held that a hospital visitor was an invitee to whom the hospital owed a duty of exercising

ordinary care. See *Gaitskill v. United States*, 129 F. Supp. 621, 623 (D. Kan. 1955) (applying Kansas law); *Mattson v. St. Luke's Hospital*, 252 Minn. 230, 232, 89 N.W.2d 743 (1958); *Jackson v. Mercy Health Center, Inc.*, 864 P.2d 839, 842-44 (Okla. 1993) (holding that statutory good samaritan immunity applied because invitee/visitor was not patient); *Sutherland v. Saint Francis Hospital, Inc.*, 595 P.2d 780, 783 (Okla. 1979) (contrasting duty to exercise ordinary care to maintain premises in a reasonably safe condition with the higher degree of care owed by a hospital to a patient); *Anderson v. Oregon City Hospital Co.*, 214 Or. 212, 216, 328 P.2d 769 (1958); 40 Am. Jur. 2d, Hospitals and Asylums § 35; Annot., 90 A.L.R.4th 478, 480; Annot., 71 A.L.R.2d 427.

A possessor of land owes an invitee a duty of exercising ordinary care. See *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 43, 815 P.2d 506 (1991); *Gerchberg*, 223 Kan. at 449. Thus, the trial court's conclusion that St. Francis owed Walters a duty of reasonable care under all the circumstances is substantially equivalent to the duty of exercising ordinary care that a possessor of land owes an invitee. See *Bank of Kansas v. Davison*, 253 Kan. 780, 792, 861 P.2d 806 (1993) (noting that a district court decision that reaches the right result will be upheld even though the district court relied on the wrong reason for its decision).

The essence of Walters' claim was that St. Francis had a duty to warn him that he might become distressed or ill from watching and assisting while the tube was being inserted, to ask him if he had a sensitivity to the sight of blood, to warn him that he should leave the room, and to assist him after he stated that he was not feeling well. The trial court applied the standard of reasonable care under all the circumstances and held that St. Francis had no duty to warn of an open and obvious danger—the danger of fainting from feeling queasy. The trial court found "that the hospital and its employees did not breach any duty by not warning a person accompanying a patient to the emergency room and hospital room of the danger of fainting or becoming ill."

Generally, a possessor of land is under no duty to remove known and obvious dangers. *Balagna v. Shawnee County*, 233 Kan. 1068, 1083, 668 P.2d 157 (1983).

St. Francis cites *Sacks v. Thomas Jefferson University Hosp.*, 684 F. Supp. 858 (E.D. Pa.), *aff'd* 862 F.2d 310 (3d Cir. 1988), for the proposition that no cause of action will lie against a hospital in favor of a third party who faints while accompanying a patient. In *Sacks*, the plaintiff accompanied her daughter to the emergency room for treatment of a wound to the child's head. The doctor on duty asked the plaintiff to hold her daughter's head while he sutured the wound. "Plaintiff voluntarily did as she was requested." 684 F. Supp. at 859. The plaintiff said that she felt faint and that she was going to leave the treatment room. The plaintiff fell and sustained injuries.

The *Sacks* court held that the hospital owed no duty to the plaintiff and could not be found liable for the plaintiff's injuries. The court emphasized that the plaintiff was not a patient. The court also held that by entering the emergency room, the plaintiff accepted the risk that she would witness events or conditions inherent in the medical treatment that might upset her. 684 F. Supp. at 859.

In *O'Hara v. Holy Cross Hospital*, 137 Ill. 2d 332, 340-42, 561 N.E.2d 18 (1990), the Illinois Supreme Court held that the emergency room of a hospital does not have a duty to protect a nonpatient visitor from fainting where the nonpatient is allowed to enter the emergency room and remain with the patient during treatment. The *O'Hara* court, however, adopted a view different from the *Sacks* court and also held that the emergency room of a hospital does have a duty to protect a nonpatient from fainting once the nonpatient is invited to participate in the care and treatment of the patient. 137 Ill. 2d at 342.

In *O'Hara*, the plaintiff testified that the nurse invited her to enter the emergency room with her son. The treating doctor asked her to take a piece of gauze and wipe the Novocain from her son's mouth while the nurse lifted the covering from her son's face. The plaintiff testified that after wiping her son's mouth, she fainted. The plaintiff also testified that she had never fainted before. The *O'Hara* court held that the lower court had erred in granting summary judgment because there was a genuine issue of material fact

as to whether the hospital had invited the plaintiff to participate in the care and treatment of her son. 137 Ill. 2d at 343.

We agree with the analysis in *Sacks*.

In these circumstances, the hospital owed Walters the duty to inform him of the procedure that was going to be performed. The danger of becoming queasy or fainting, however, was open, obvious, and known to Walters. We conclude that ordinary and reasonable care does not require a hospital to warn an invitee that he or she might have an adverse reaction to witnessing a medical procedure. More specifically, a hospital has no duty to warn an invitee about the possibility of becoming queasy or fainting from witnessing a medical procedure because this is a danger that is open, obvious, and known to the invitee. The myriad of possible adverse reactions of an individual accompanying another to the hospital are not within the knowledge of the hospital. A contrary conclusion could open hospitals to claims that would cause hospitals to bar all visitors during all treatments.

Walters argues that the trial court improperly relied on the assumption of risk doctrine. The trial court concluded that any danger associated with fainting from viewing the medical procedure was open and obvious and completely personal to the experience of the individual.

"In Kansas, the common-law assumption of risk doctrine is restricted to cases involving employer-employee relationships." *Tuley v. Kansas City Power & Light Co.*, 252 Kan. 205, 210, 843 P.2d 248 (1992). The flaw in Walters' argument is that the trial court did not rely on the assumption of risk doctrine in its memorandum decision. Therefore, this argument lacks merit.

The trial court held that Walters' injuries were not proximately caused by St. Francis' acts or omissions. Walters argues that this ruling was incorrect.

Since we have concluded that there was no breach of any duty owed to Walters, the issue of proximate cause is moot.

Affirmed.