[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #101 AND #105
On July 15, 1999, the plaintiffs, John and Anne Marie Murillo, accompanied Anne Marie's sister, Susan, to Griffin Hospital where Susan was to undergo emergency abdominal surgery. The defendant Jennifer Fitzpatrick (Fitzpatrick), an emergency medical technician employed by the defendant Seymour Ambulance Association, Inc. (Seymour Ambulance), attempted to find a vein in Susan's arm in which to insert a needle for intravenous solutions that would be used during the course of the CT Page 3392 surgery. When she was unable to find a vein, the defendant Helen Zanowiak (Zanowiak), a registered nurse employed by Griffin Hospital, succeeded in doing so. As a result of witnessing these events, Anne Marie fell to the floor and suffered both physical and emotional injury.
On August 10, 2001, the plaintiffs filed a complaint against Seymour Ambulance, Fitzpatrick, and Zanowiak. The complaint, in effect, alleges negligence in that Fitzpatrick and Zanowiak breached a duty of care they owed Anne Marie by failing to assist her when they knew or should have known that she was likely to faint and be injured as a result of their attempts to insert the needle into her sister's arm. The complaint further alleges loss of consortium as a result of these events, claiming John suffered the loss of society, companionship, and comfort from his wife during the course of her recovery.
On September 20, 2001, Zanowiak filed the present motion to strike the plaintiffs' complaint. On October 22, 2001, Fitzpatrick and Seymour Ambulance also filed a motion to strike.[1] On October 11, 2001, a Memorandum of Decision was filed in a companion case, Murillo v. GriffinHospital, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 71919S (October 10, 2001, Nadeau, J.) (30 Conn.L.Rptr. 517). That case involved the same parties and the same negligence and loss of consortium claims. Judge Nadeau granted the defendant's motion to strike both counts.[2] On September 25, 2001, Seymour Ambulance and Fitzpatrick filed a motion to consolidate the Griffin Hospital action with the present action. This motion is pending.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Shea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1993). In ruling on a motion to strike, the trial court examines the complaint "construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Brackets in original; internal quotation marks omitted.) Dodd v. Middlesex Mutual Assurance Co., 242 Conn. 375, 378,698 A.2d 859 (1997). When deciding the motion, "the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293
(1997). "[G]rounds other than those specified should not be considered by the trial court in passing upon a motion to strike. . . ." (Citation omitted; internal quotation marks omitted.) Gazo v. Stamford,255 Conn. 245, 259, 765 A.2d 505 (2001)
 I
CT Page 3393 FAILURE TO ATTACH A CERTIFICATE OF GOOD FAITH
In their motion to strike, Seymour Ambulance and Fitzpatrick allege that the plaintiffs have failed to attach a certificate of good faith to their complaint, thus failing to state a claim upon which relief may be granted. In response, the plaintiffs argue that a certificate of good faith is not required because Anne Marie was not a patient of the defendants and had filed a negligence, not a medical malpractice claim.
"[T]he failure to attach a certificate of good faith pursuant to §52-190a subjects the case to a motion to strike the complaint . . . for failure to state a claim upon which relief can be granted. . . ."Gabrielle v. Hospital of St. Raphael, 33 Conn. App. 378, 384,635 A.2d 1232, cert. denied, 228 Conn. 928, 640 A.2d 115 (1994).[3]
"Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Internal quotation marks omitted.) Davis v. Margolis, 215 Conn. 408, 415,576 A.2d 489 (1990). "There can be no actionable negligence on the part of the physician unless there is a physician-patient relationship." 1 D. Louisell H. Williams, Medical Malpractice, 2001, § 8.03, p. 8-17.
In order for the certificate of good faith requirement to apply to this case, Anne Marie must have filed a medical malpractice claim, and she must be the recipient of the alleged deficient medical services; that is, she must be the patient of the defendant. Anne Marie was not the patient. Therefore, the plaintiffs' claim is a negligence claim, rather than a medical malpractice one, and the plaintiffs are not required to attach a certificate of good faith to their complaint.
In their memorandum supporting their motion to strike, Seymour Ambulance and Fitzpatrick argue that the facts of the case fit within the definition of medical malpractice outlined in Trimel v. Lawrence Memorial Hospital Rehabilitation Center, 61 Conn. App. 353, 746 A.2d 203, cert. dismissed, 258 Conn. 711, ___ A.2d ___ (2001). The Trimel court listed the relevant factors for determining whether a claim constitutes one for medical malpractice: "(1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." Trimel v. Lawrence Memorial HospitalRehabilitation Center, supra, 61 Conn. App. 358. The present case fails the second and third prongs of this test because, as discussed above, no CT Page 3394 physician-patient relationship existed between the defendants and Anne Marie, and the allegations of the complaint do not involve the exercise of medical treatment on the plaintiff. Accordingly, the defendants' motion to strike on the ground of failure to attach a certificate of good faith is denied.
 II NEGLIGENCE
In their complaint, the plaintiffs allege that the defendants were negligent in their actions toward Anne Marie. Specifically, the complaint alleges that the defendants breached their duty to Anne Marie in that "they knew or should have known that the plaintiff was likely to faint and be injured in a fall as a direct result of their prolonged attempts to insert the needle." (Complaint, ¶ 9.) In response, the defendants argue that they do not owe the plaintiffs any recognized duty of care because they could not have reasonably foreseen that Anne Marie would faint as a result of witnessing the venipuncture procedure, and also because public policy militates that courts should refrain from creating a duty between a medical professional and a non-patient.
The earlier Griffin Hospital court correctly stated that no Connecticut case directly addresses the plaintiffs' contention that a hospital, and in this case, emergency medical providers and a registered nurse, owed a duty of care to a bystander. Murillo v. Griffin Hospital, supra,30 Conn.L.Rptr. 517. Like the Griffin Hospital court, this court also refers to case law from other jurisdictions to shed light on this issue. InSacks v. Thomas Jefferson University Hospital, 684 F. Sup. 858, aff'd862 F.2d 310 (3d Cir. 1988), the plaintiff mother filed suit against a hospital for injuries sustained after fainting while witnessing the doctor suture her daughter's forehead in the emergency room. Id., 859. While observing the suturing, the plaintiff had told the defendant's agent that she felt faint and was going to leave the emergency room. Id. The plaintiff argued that the hospital breached its duty of care to her when it permitted her to be present and assist in holding her daughter's head. Id. In concluding that the hospital did not owe a duty to the plaintiff, the court stated that "[a]t no time did the hospital agree to, or undertake to, accept the plaintiff as a patient, nor was a physician-patient relationship ever established. Only the plaintiff's daughter was admitted to the defendant's emergency room. Mrs. Sacks voluntarily entered the treatment room. . . . By doing so, she accepted the risk that she would witness events or conditions inherent in the medical treatment which could upset her. She was not required to be present nor was she required to hold her daughter's head." Id. CT Page 3395
In Walters v. St. Francis Hospital and Medical Center, Inc.,23 Kan. App. 2d 595, 932 P.2d 1041, review denied (April 30, 1997). the court used public policy principles to justify denying a bystander's cause of action against a hospital. In Walters, the plaintiff accompanied his fiancee for emergency treatment at the defendant hospital, and as a result of witnessing repeated unsuccessful attempts to insert a tube into the plaintiff's fiancee, the plaintiff fainted and fell to the floor. Id., 595-96. The plaintiff argued that the hospital had a duty to warn him that he might faint from watching the procedure and to leave the room if this should happen, and to assist him after he stated that he was not feeling well. Id., 599. In concluding that the hospital did not owe the plaintiff a duty of care, the court reasoned, "a hospital has no duty to warn . . . about the possibility of becoming queasy or fainting from witnessing a medical procedure because this is a danger that is open, obvious, and known. . . . The myriad of possible adverse reactions of an individual accompanying another to the hospital are not within the knowledge of the hospital. A contrary conclusion could open hospitals to claims that would cause hospitals to bar all visitors during all treatments." Id., 601.
Turning to Connecticut law, although nothing speaks directly to the facts of the present case, certain policy principles are applicable. The test for the existence of a legal duty of care is a two-part test. "The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Internal quotations marks omitted.) Gazo v. Stamford, supra, 255 Conn. 250. "A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences. . . . The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . ." (Internal quotation marks omitted.) Lombard v. Edward J. Peters, Jr., P.C.,252 Conn. 623, 633, 749 A.2d 630 (2000).
In Maloney v. Conroy, 208 Conn. 392, 545 A.2d 1059 (1988), as reaffirmed by Mendillo v. Board of Education, 246 Conn. 456, 717 A.2d 1177
(1998), the plaintiff brought a negligent infliction of emotional distress claim for the alleged medical malpractice in the treatment of her mother. Using public policy principles, the court denied recovery and stated that "[m]edical judgments as to the appropriate treatment of a CT Page 3396 patient ought not to be influenced by the concern that a visitor may become upset from observing such treatment . . . The focus of the concern of medical care practitioners should be upon the patient and any diversion of attention or resources to accommodate the sensitivities of others is bound to detract from that devoted to patients." Maloney v.Conroy, supra, 208 Conn. 403. As the Griffin Hospital court correctly stated, "the court denied recovery to a non-patient bystander in a situation of alleged medical malpractice. In the present case, where medical malpractice is not even alleged, it would seem anomalous to impose liability to a third party." Murillo v. Griffin Hospital, supra,30 Conn.L.Rptr. 519.
The defendants did not have a duty to warn Anne Marie that she may faint from observing the venipuncture procedure, and to assist her if she fell. As in Sacks, the defendants never accepted Anne Marie as a patient, so there existed no physician-patient relationship between the defendants and Anne Marie. By being present during the venipuncture procedure, Anne Marie accepted the risk that she would observe procedures that would be upsetting. Moreover, incorporating the public policy principles articulated in Walters and in Connecticut cases, medical personnel can not be held responsible for every type of injury a bystander may suffer during treatment. To do so would cause hospitals to bar visitation during treatment and likely subject medical personnel to frivolous claims. Limiting analysis to a foreseeability inquiry would open the door to litigation, and the defendants here should not have to "suffer potential liability to the visitor whose sudden surprise distress would compete for attention with the staffers' clearer duties to the patient." Murillo v. Griffin Hospital, supra, 30 Conn.L.Rptr. 519.
The plaintiffs argue the defendants were negligent not because it was foreseeable that Anne Marie would faint as a result of the venipuncture procedure, but because after Anne Marie communicated that she felt faint, it was then reasonably foreseeable that she would faint and suffer injury, and the defendants had a duty to prevent this. A motion to strike is, however, dictated by the facts alleged in the complaint, and the complaint does not provide the factual scenario that the plaintiffs argue. The plaintiffs' complaint alleges that "in the exercise of ordinary care [the defendants] knew or should have known that the plaintiff was likely to faint and be injured in a fall as a direct result of their prolonged attempts to insert the needle. . . . As a direct result of the aforementioned breach of duty and negligence by the defendants . . . the plaintiff . . . while in a prone and helpless state, fell face first, flat on the floor and suffered great mental and physical pain and suffering. She suffered a broken jaw. . . ." (Complaint, ¶¶ 9; 11.) As the Griffin Hospital court correctly noted, "[t]he case does not involve allegations of negligence regarding any care CT Page 3397 provided after the fall." Murillo v. Griffin Hospital, supra,30 Conn.L.Rptr. 517.
The plaintiffs also attempt to rebut the public policy argument of limiting liability so that medical personnel's attention will not be diverted from the patient. The plaintiffs reason that because the venipuncture procedure was completed before Anne Marie communicated that she felt faint, Fitzpatrick and Zanowiak's attention was no longer focused on Susan. This argument is meritless because the duty to the patient does not end immediately after the medical procedure is completed. To conclude otherwise would wrongfully divert deserved attention away from the patient.
The plaintiffs also seek to distinguish this case from Maloney by arguing that Anne Marie suffered physical injury as a result of the defendants' negligence, while the scope of Maloney was limited to emotional disturbance. The plaintiffs' argument is misplaced. The focus of Maloney is limiting medical personnel's liability to bystanders; it is not the distinction between physical and emotional injury. Accordingly, the defendants' motions to strike the plaintiffs' negligence claim is granted.
 III LOSS OF CONSORTIUM
The plaintiffs allege that as a result of the defendants' negligence which led to Anne Marie's injuries, John suffered the loss of society, companionship, and comfort of his wife during the course of her recovery. In response, the defendants argue that because a loss of consortium claim is derivative of the underlying negligence claim, and the defendants were not negligent, this court should strike the plaintiffs' loss of consortium claim.
"[C]onsortium . . . [encompasses] the services of the [injured spouse], the financial support of the [injured spouse], and the variety of intangible relations which exist between spouses living together in marriage. . . . These intangible elements are generally described in terms of affection, society, companionship and sexual relations." (Citations omitted; internal quotation marks omitted.) Jacoby v.Brinckerhoff, 250 Conn. 86, 90, 735 A.2d 347 (1999). "[A]n action for loss of consortium, although independent in form, is derivative of the injured spouse's cause of action." (Internal quotation marks omitted.) Id., 91-92.
In this case, the plaintiffs allege that the defendants' negligence CT Page 3398 caused injury to Anne Marie, and that as a result Anne Marie's husband, John, suffered a loss of consortium. Because the plaintiffs' negligence claim is stricken, John's loss of consortium claim is also necessarily stricken.
For the foregoing reasons, the court denies defendants' motion to strike on the ground of failure to attach a certificate of good faith. The court grants the defendants' motions to strike the plaintiffs' negligence and loss of consortium claims.
The Court
 By ___________________ Holden, J.